THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HAROLD HARKAVY, Defendant.

County Court, Kings County, June 25, 1948.

*Miles F. McDonald, District Attorney (Frank DiLalla* of counsel), for plaintiff.

*Henry G. Singer* for defendant.

MARASCO, J.  Indicted by the Grand Jury of Kings County for violating section 965 of the Penal Law, the defendant is specifically charged as follows: " The defendant, on or about September 23, 1947, in the County of Kings, directly and indirectly solicited, requested, demanded, received, collected and accepted from another, to wit, John Botti, and agreed to solicit, request, demand, receive, collect and accept from said John Botti a donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of three hundred dollars, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage over others in entering into an agreement, oral and written, for the lease and rental of real property, to wit, a certain apartment at 215 Sterling Street, County of Kings, for a term and for the use and occupation thereof, and the said defendant refused to enter into such agreement, unless he received directly or indirectly the aforementioned donation, gratuity, bonus, emolument, gift, payment and thing of value."

Section 965 of the Penal Law provides: " *Excessive charges in connection with rental agreements.*  Any person who shall, directly or indirectly, solicit, request, demand, receive, collect or accept from another, or who agrees to solicit, request, demand, receive, collect or accept from another, any donation, gratuity, bonus, emolument, gift, payment or thing of value, in addition to lawful charges, upon the representation, understanding or statement that compliance with such request or demand will facilitate, influence or procure an advantage over others in entering into an agreement, either oral or written, for the lease

or rental of real property for any term or for the use or occupation thereof, or any person who shall refuse to enter into any such agreement unless he receives, directly or indirectly, any such donation, gratuity, bonus, emolument, gift, payment or thing of value, shall be guilty of a misdemeanor * * *.''

After the granting of an application to inspect the grand jury minutes upon which the indictment was found, defendant now moves to dismiss the indictment on the following grounds.

(1) Section 965 of the Penal Law is not applicable to residential space.

(2) If section 965 of the Penal Law was intended to apply to residential space, it is invalid as being in conflict with the due process clauses of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the New York State Constitution, in that it constitutes an unlawful delegation of legislative powers in violation of section 1 of article III of the New York State Constitution; in that it contravenes section 16 of article III of the New York State Constitution prohibiting incorporation by reference; and in that it is in conflict with the Federal Housing and Rent Act of 1947.

(3) That the evidence before the grand jury was insufficient to warrant the finding of the indictment.

(4) That the misconduct of the assistant district attorney who presented the case to the grand jury invalidates the indictment.

The court has carefully considered the matters urged by the learned counsel for the defendant both on his oral argument and in his memorandum of law and has reached the conclusion that the objections to the indictment and the statute upon which it is founded cannot be sustained. The various objections will be considered in turn.

The defendant's argument that section 965 of the Penal Law was intended to apply only to commercial space ignores the plain, unambiguous language of the statute and disregards the evils which prompted the legislation. The statute by its terms applies to the lease or rental of '' real property ''. The defendant would have the court exclude by implication residential space. Had the Legislature intended to exclude residential space from the orbit of the prohibition, it would have been a simple matter for the Legislature to have said so.

The evils which prompted the enactment of section 965 of the Penal Law were not confined to practices in the renting of commercial space. Our Legislature recognized that the

existence of a public emergency resulting from an acute shortage in dwellings, necessitated action " to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health ". (L. 1946, ch. 274, § 1, as amd.) It was this emergency which prompted the adoption of the so-called " Stand-By Residential Rent Law " on March 30, 1946 (L. 1946, ch. 274). It would be unreasonable to assume that when the Legislature enacted section 965 of the Penal Law scarcely three weeks later, it was oblivious of the public emergency resulting from the acute shortage of housing, and that it was mindful only of the protection of the citizens in their possession of commercial space.

The constitutional objections urged by the defendant center about the presence in the statute of the phrase " in addition to lawful charges ". Indeed, counsel for the defendant conceded on the oral argument before the court, that if that phrase had been omitted, his objections to the statute could not be sustained. The basic premise which underlies all of defendant's constitutional objections to the statute is that it is incumbent upon the prosecution in order to make out a prima facie case to prove the " lawful charges ". Defendant argues that doubt as to the meaning of " lawful charges " calls for the invocation of the due process clauses of the Federal and State Constitutions; that if " lawful charges " means the maximum rent permitted under the statutes of Congress and rules and regulations of the administrative agencies established pursuant thereto, then the statute involves an unlawful delegation of legislative powers in violation of section 1 of article III of the New York State Constitution, and a violation of the prohibition against incorporation by reference contained in section 16 of article III of the New York State Constitution.

The court is not inclined to accept the basic premise implicit in defendant's argument. It is the court's view that if a landlord exacts a bonus in addition to the rent provided for in the lease for entering into a lease, the crime is made out without regard to the question whether the rental called for in the lease is less than or in excess of the rent permitted under the Federal law. If the rental fixed in the agreement is at or below the maximum permitted by Federal law, the bonus exacted would literally be in addition to " lawful charges ". If in addition to the exaction of a bonus, the agreed rental were in excess of the charges permitted by law, it would be absurd to argue that

no violation of the statute existed on the ground that the bonus was in addition to " unlawful charges " rather than " lawful charges ". It would seem clearly to follow therefore, that if the prosecution were to establish the exaction of a bonus in addition to the rent, the crime is fully proved. The court has nevertheless considered the various constitutional objections urged by the defendant on the assumption that proof of " lawful charges " is an essential ingredient of the People's case.

There can be no doubt of the legislative power to enact laws to cope with the emergency recognized by the Legislature arising from the acute shortage of residential space and further to enact penal laws for their proper enforcement. In discussing the housing laws enacted following World War I, the Court of Appeals per Judge POUND, declared in *People ex· rel. Durham Realty Corp.* v. *La Fetra* (230 N. Y. 429, 443–444): " The landlord is a purveyor of a commodity; the vendor of space in which to shelter one's self and family. He has heretofore been permitted to make his own terms with his tenants, but that consideration is not conclusive. Unquestionably some taking of private property for the benefit of a class of individuals is the result of the housing laws. The free choice of tenants; the unlimited right to bargain; these are property rights which may not be affected unless a public advantage over and beyond such rights justifies legislative interference, but ' an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use.' * * *

" Emergency laws in time of peace are uncommon but not unknown. Wholesale disaster, financial panic, the aftermath of war (*Hamilton* v. *Kentucky Distilleries & W. Co.*, 251 U. S. 146, 161) earthquake, pestilence, famine, and fire, a combination of men or the force of circumstances may, as the alternative of confusion or chaos, demand the enactment of laws that would be thought arbitrary under normal conditions."

Or as stated by Judge LEARNED HAND in *Finn* v. *415 Fifth Avenue Co.* (153 F. 2d 501) " It has now for many years been accepted law that the ownership of property, certainly when like land it is limited, does not entitle the owner to press to the extreme the advantage which its scarcity permits in times of ' emergency.' "

The Court of Appeals, in sustaining the constitutionality of the Commercial Rent Law in the recent case of *Twentieth Century Associates* v. *Waldman* (294 N. Y. 571, 580) stated:

" The principle is firmly established today that all contracts are subject to the police power of the State, and, when emergency arises and the public welfare requires modification of private contractual obligations in the public interest, the question is not whether ' legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end.' "

It is therefore clear that the subject matter of section 965 of the Penal Law is within the general legislative power.

The defendant interprets the words " lawful charges " in section 965 of the Penal Law to mean maximum charges permitted under the laws of the United States, and rules and regulations adopted pursuant to such laws, and argues that the statute therefore results in an unlawful delegation of legislative powers and in an unlawful incorporation by reference. Two recent decisions of the Court of Appeals dispose of these contentions (*People* v. *Lewis*, 295 N. Y. 42; *People* v. *Mailman*, 293 N. Y. 887).

*People* v. *Lewis* (*supra*) involved the constitutionality of Local Law No. 35 of 1945 of New York City which provides (Administrative Code, § U41.5.0, subd. [a]): " It shall be unlawful for any person to sell, offer for sale, supply or deliver any commodity or service, or in the course of trade or business buy or receive any commodity or service, for which a maximum price has been or may hereafter be prescribed by any regulation, order or price schedule or any amendment thereof, issued by the office of price administration of the United States of America at a price or other consideration in excess of the applicable maximum price prescribed by the applicable regulation, order or price schedule, or offer, solicit, attempt or agree to do any of the foregoing."

The Court of Appeals held (p. 50) that " there can be no doubt that such a law is within the field of legislative power of the city as defined in the provisions of the Constitution ". It is true that the objections under discussion were not specifically raised in the *Lewis* case. The failure to raise these objections was undoubtedly motivated by the fact that the same objections were overruled with regard to similar legislation in *People* v. *Mailman* (*supra*).

The defendant, urging that the statute is vague and indefinite, invokes the due process clauses of the Federal and State Constitutions. The defendant relies upon the rule enunciated in

*People* v. *Grogan* (260 N. Y. 138, 145) that: "Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid."

The court fails to see how an individual could be misled by the language of section 965 of the Penal Law. All a landlord need do to avoid violating the statute is to refrain from exacting a bonus in addition to the rent.

Defendant's final objection to the validity of the statute is that it conflicts with the Federal Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, § 1881 *et seq.*) in that the Federal legislation in the same sphere contains no penal provisions.

Counsel for the defendant urges that so long as the Federal Government sees fit to legislate in the field of rent control its jurisdiction is paramount and that in any event no such law on the same subject matter may stand if it is inconsistent with the Federal law.

In the absence of a clear manifestation by the Federal Government, it will not be assumed that the Federal Government intended to prohibit the States, assuming that it could validly do so, from exercising its police power to punish the practices prohibited by section 965 of the Penal Law (*Matter of Harlem Check Cashing Corporation* v. *Bell*, 296 N. Y. 15). It is of course true that the States may not adopt legislation inconsistent with the Federal Government in a sphere in which the Federal Government is supreme. The defendant urges that such inconsistency exists, in that New York State has declared to be a crime that which the Federal Government has failed so to declare. The court cannot accept that argument. That there is a difference does not mean that there is an inconsistency. "Laws dealing with the same subject matter are not necessarily incompatible because not identical." (*People* v. *Lewis*, 295 N. Y. 42, 51, *supra.*)

It is true that the Legislature could not have authorized any act which the Federal Government prohibited nor could the State impair any rights conferred by the Federal Government. In the instant case, the State law prohibits the same thing which the Federal law prohibits. The fallacy in the defendant's argument is that it presupposes that the Legislature has sought to punish conduct which Congress has licensed. It does not follow from the mere fact that the Federal Government has failed to declare the doing of the prohibited act a crime, that the offender may have immunity against a similar State prohibition. The State law here under consideration complements rather than

conflicts with the Federal law in that it makes it the more readily enforcible. The principle in the *Lewis* case (*supra*) is applicable. There, a local law of the city of New York was challenged on the ground that it prescribed a greater punishment for a violation of its provisions than did an act of the State Legislature covering the same subject matter. The Court of Appeals held (p. 50) : " The maximum penalty imposed by the State statute — which we held valid in *People* v. *Mailman* (293 N. Y. 887) — is a $25 fine and five days in jail, whereas under the local law such violations may be punished by a larger fine, longer imprisonment and other penalties such as forfeiture of licenses, if any, issued by the city. But this difference in penalty does not invalidate the local law. (*Rogers* v. *Jones,* 1 Wend. 237, 261; *Wood* v. *City of Brooklyn,* 14 Barb. 425, 429; *City of Brooklyn* v. *Toynbee,* 31 Barb. 282, 284.) For authorities from other States, see 3 McQuillin on Municipal Corporations (2d ed. rev.), section 924."

See, also, *Matter of Tartaglia* v. *McLaughlin* (297 N. Y. 419) and *Matter of Molnar* v. *Curtin* (297 N. Y. 967) upholding the validity of the New York City Rent Control Laws in face of the contention that they conflict with the State law.

The evidence, adduced before the grand jury, uncontradicted is prima facie sufficient to sustain the indictment (Code Crim. Pro., § 258).

Defendant urges that the statement of the assistant district attorney to the grand jurors, at the close of all the testimony, was highly prejudicial. The court is of the opinion that such statement could not have influenced the grand jury particularly in view of the closing remarks made by the assistant district attorney.

The motion to dismiss the indictment is denied.