(64 Misc. Rep. 15.)

NEW YORK CENT. & H. R. R. CO. v. WILLIAMS, State Labor Com'r.

(Supreme Court, Trial Term, Albany County.    June, 1909.)

1. CONSTITUTIONAL LAW (§ 45*) — DETERMINATION OF CONSTITUTIONAL QUESTIONS—JUDICIAL AUTHORITY.

Though every presumption is in favor of a statute's constitutionality, if, nevertheless, its enforcement must necessarily produce a conflict with the constitution's letter or spirit, it is the duty of the court to condemn it.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 42; Dec. Dig. § 45.*]

2. EVIDENCE (§ 5*)—JUDICIAL NOTICE.

It is a recognized fact of which the courts can take judicial notice that frequent conflicts have occurred between employers and employés in this and other states.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 4; Dec. Dig. § 5.*]

3. EVIDENCE (§ 20*)—JUDICIAL NOTICE.

Judicial notice will be taken that the cash from its freight and passenger business is not all received by the New York Central & Hudson River Railroad Company from its New York terminal, from which it starts its pay car, but from its various stations along the road.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 24; Dec. Dig. § 20.*]

4. CONSTITUTIONAL LAW (§ 146*)—IMPAIRMENT OF OBLIGATION OF CONTRACTS.

Labor Law (Consol. Laws, c. 31) § 10, requiring payment of wages in cash weekly to employés of practically all corporations, except steam railroad, which are required, by section 11, to pay twice a month, does not interfere with the rights of either party to a railroad contract of employment where terminable at the will of either party, and where the time of payment is a mere incident to the contract, and not an essential part thereof.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 456; Dec. Dig. § 146.*]

5. CONSTITUTIONAL LAW (§ 126*)—CHARTERS—RESERVED POWER TO AMEND.

Labor Law (Consol. Laws, c. 31) § 10, requiring payment of wages in cash weekly to employés of practically all corporations except steam railroad, which are required to pay semimonthly, is a valid exercise of the power reserved to the Legislature to amend laws applicable to charters of steam railroad corporations, and is not unconstitutional.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 126.*]

6. COMMERCE (§ 58*)—INTERSTATE—RESTRICTION UPON.

Labor Law (Consol. Laws, c. 31) § 10, requiring payment of wages in cash weekly to employés of practically all corporations except steam railroad, which are required by section 11 to pay semimonthly, does not, as to a steam railroad, interfere with and constitute a restriction upon interstate commerce so as to be void.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 77–86; Dec. Dig. § 58.*]

7. MASTER AND SERVANT (§ 69*)—POLICE POWER—REGULATION OF PAYMENT OF WAGES.

Labor Law (Consol. Laws, c. 31) § 10, requiring payment of wages in cash weekly to employés of practically all corporations, except steam railroad, which are required by section 11 to pay semimonthly, is a valid exercise of the police power of the state.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 79; Dec. Dig. § 69.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

118 N.Y.S.—50

8. CONSTITUTIONAL LAW (§§ 89, 208, 238, 276*)—DUE PROCESS OF LAW—RIGHT
    OF FREE CONTRACT—CLASS LEGISLATION—EQUAL PROTECTION OF LAW.
        The act is not invalid, as depriving the employer of its right of con-
    tract, which is property, without due process of law, nor as impairing the
    right of free contract between employer and employé, nor as discrimi-
    nating between corporations and individuals and firms without reason,
    which is class legislation, and deprives the corporations of the equal pro-
    tection of the law.
        [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 628,
    690; Dec. Dig. §§ 89, 208, 238, 276.*]

Action by the New York Central & Hudson River Railroad Com-
pany against John Williams, as State Commissioner of Labor. Com-
plaint dismissed.

Alexander S. Lyman, for plaintiff.
Edward R. O'Malley, Attorney General, for defendant.

BETTS, J. In this action the plaintiff seeks to enjoin the defendant
from proceeding under section 12 of the labor law (Consol. Laws, c.
31) to recover penalties for violating sections 10 and 11 of said law,
on the ground that such sections 10 and 11 are in violation of the Con-
stitution of the United States and of the state of New York, and there-
fore void. The sections in question are the following sections of the
labor law:

Sec. 10. "Cash payment of wages.—Every manufacturing, mining, quarrying,
mercantile, railroad, street railway, canal, steamboat, telegraph and telephone
company, every express company, every corporation engaged in harvesting and
storing ice, and every water company, not municipal; and every person, firm or
corporation engaged in or upon any public work for the state or any municipal
corporation thereof, either as a contractor or a subcontractor therewith, shall
pay to each employé engaged in his, their or its business the wages earned by
such employé in cash. No such company, person, firm or corporation shall
hereafter pay such employés in scrip, commonly known as store money orders.
No person, firm or corporation engaged in carrying on public work under con-
tract with the state or with any municipal corporation of the state, either as
a contractor or subcontractor therewith, shall, directly or indirectly, conduct
or carry on what is commonly known as a company store, if there shall, at
the time, be any store selling supplies within two miles of the place where
such contract is being executed. Any person, firm or corporation violating the
provisions of this section shall be guilty of a misdemeanor."

Sec. 11. "When wages are to be paid.—Every corporation or joint stock as-
sociation or person carrying on the business thereof by lease or otherwise shall
pay weekly to each employé the wages earned by him to a day not more than
six days prior to the date of such payment. But every person or corporation
operating a steam surface railroad shall, on or before the first day of each
month, pay the employés thereof the wages earned by them during the first
half of the preceding month ending with the fifteenth day thereof, and on or
before the fifteenth day of each month pay the employés thereof the wages
earned by them during the last half of the preceding calendar month."

The provisions of these statutes objected to by the plaintiff are, in
section 10, the provision requiring payment of wages in cash, and,
in section 11, the provision which requires a semimonthly payment of
wages of the employés of the plaintiff. Section 11 of the labor law as
it existed when this action was begun is also important in this litiga-
tion. It has now been amended so it is section 12, and is as follows:

"Sec. 12. Penalty for violation of preceding section.—If a corporation or
joint stock association, its lessee or other person carrying on the business

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thereof, shall fail to pay the wages of an employé, as provided in this article, it shall forfeit to the people of the state the sum of fifty dollars for each such failure, to be recovered by the commissioner of labor in his name of office in a civil action."

As this section existed at the time of the commencement of this action a corporation was limited to a certain number of defenses to an action brought by the commissioner of labor for the penalty provided therein. This limitation of defenses, however, has been repealed by the above-amended statute passed this year, so that that part of the contention is eliminated from this case.

It is contended on the part of the plaintiff that the provision requiring the semimonthly payment of wages is unconstitutional, first, because it is retrospective and tends to impair the obligation of the contracts between the plaintiff and its employés; second, that as to the time of payment and the payment of cash it is unconstitutional because the effect of these provisions is to deprive the plaintiff, without due process of law, of its right of contract, which is property, and therefore in violation of section 6 of article 1 of the Constitution of this state; and in violation of the fourteenth amendment of the Constitution of the United States; third, because it restricts the right of the employé as well as the right of the employer to contract; fourth, that it discriminates between corporations on the one hand and individuals and firms on the other, without adequate reason for such discrimination, which constitutes class legislation, and that thereby corporations are deprived of the equal protection of the laws; and, fifth, because it constitutes a restriction upon interstate commerce. These are the principal grounds of attack. The Attorney General, on behalf of the defendant, argues that the law is constitutional, urging that it is a valid exercise of legislative power for two reasons: First, under the reserved right to amend charters and, second, under the general police power possessed by the Legislature.

I shall examine and consider these questions very briefly. By 1 Rev. St. (1st Ed.) pt. 1, c. 18, "of incorporations," tit. 3, § 8, it is provided as follows:

"The charter of every corporation that shall hereafter be granted by the Legislature shall be subject to alteration, suspension and repeal in the discretion of the Legislature."

This provision was contained in the Constitution of 1846, as follows:

"Article 8. Section 1. Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the objects of the corporation cannot be attained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time or repealed."

Article 8, § 1, Const. 1894 (our present Constitution), is identical with the same article and section of the Constitution of 1846. See Lord v. Equitable Life Assurance Society, 194 N. Y. 212–221, 87 N. E. 443, as to the history of the above-quoted provisions of the Revised Statutes and of our state Constitution. The plaintiff was incorporated in 1869, under laws passed pursuant to the above provisions of the Constitution of 1846.

The contention here requires the court to pass upon the constitutionality of these statutes. Under our form of government, which consists

of three bodies, the executive, the legislative, and the judicial, each properly and necessarily independent of the other, the matter of passing upon the constitutionality of an act of the Legislature is one of the most important duties that courts are called upon to perform. This act here assailed has already been passed upon by two of the great departments of government, passed by the Legislature and approved by the Governor. Not lightly, then, should the courts undertake to set aside such a statutè, or any statute, unless it is clearly shown that it is repugnant to the organic law of the state. "Within settled rules it requires a case to be made showing clearly that the statute, when fairly and reasonably construed, is brought into conflict with some provision of the Constitution before the court can be justified in pronouncing it an unauthorized expression of the legislative will. If the act and the Constitution can be so construed as to enable both to stand, and each can be given a legitimate office to perform, it is the duty of the court to give them such construction; but, if this cannot be done, it is equally our duty to declare the supremacy of the constitutional provision and nullity of the statute. While every presumption is in favor of the constitutionality of the law, if, nevertheless, it appears that its enforcement must necessarily produce a conflict with the letter or spirit of the Constitution, it is the duty of the court to condemn the law." People ex rel. Killeen v. Angle, 109 N. Y. 567, 17 N. E. 413; Sweet v. City of Syracuse, 129 N. Y. 316–329, 27 N. E. 1081, 29 N. E. 289.' The above is the rule in this state as laid down by our Court of Appeals. The same rule holds as to claimed conflicts of state statutes with the Constitution of the United States. See Sweet v. Rechel, 159 U. S. 380–392, 16 Sup. Ct. 43, 46, 40 L. Ed. 188, in which it is held:

"But in determining whether the Legislature, in a particular enactment, has passed the limits of its constitutional authority, every reasonable presumption must be indulged in favor of the validity of such enactment. It must be regarded as valid, unless it can be clearly shown to be in conflict with the Constitution. It is a well-settled rule of constitutional exposition that if a statute may or may not be, according to circumstances, within the limits of legislative authority, the existence of the circumstances necessary to support it must be presumed."

. See, also, Home Telephone Co. v. Los Angeles, 211 U. S. 265–281, 29 Sup. Ct. 50, 54 L. Ed. ——, in which the same doctrine is again laid down by the United States Supreme Court, and the rule is applied to city ordinances of the city of Los Angeles, Cal., which ordinances, it was claimed by the telephone company, impaired the obligations of a contract, and were therefore in violation of the Constitution of the United States.

We thus approach the examination of this question with the idea that one who alleges a statute of this state is in conflict with the Constitution of this state, and also with the Constitution of the United States, must establish those facts; that the presumption is in favor of the constitutionality of the act. It would, perhaps, be enlightening to make a brief inquiry into the history of the statutes here assailed so far as some portions of them have a history. Chapter 381, p. 508, Laws 1889, was "An act to provide for the cash payment of wages by corporations." Section 1 thereof provided as follows:

"Every manufacturing, * * * railroad, * * * corporation, * * * shall pay to each and every employé engaged in its business the wages earned by such employé in cash; and it shall not be lawful for any of the above named companies or corporations to pay their employés in their own script or that of others, commonly known as store money orders."

Section 2 provided a penalty for the violation of section 1. This law has been continued either in its original form or by amendment until the present day, a period of 20 years, and its constitutionality has never been attacked, I understand, prior to this proceeding. Chapter 388, p. 741, Laws 1890, was "an act to provide for the weekly payment of wages by corporations." Section 1 thereof was as follows:

"Section 1. Every manufacturing, mining or quarrying, lumbering, mercantile, railroad, surface, street, electric and elevated railway (except steam surface railroads), steamboat, telegraph, telephone and municipal corporation, and every incorporated express company and water company shall pay weekly each and every employé engaged in its business the wages earned by such employé to within six days of the date of such payment; provided, however, that if at any time of payment any employé shall be absent from his regular place of labor he shall be entitled to said payment at any time thereafter upon demand."

This chapter 388 of the Laws of 1890 was amended by chapter 717, p. 1783, Laws 1893, but was still not made applicable to a steam surface railroad company.

This act of 1890 was further amended by chapter 791, p. 556, Laws 1895, by providing:

"Every person or corporation operating a steam surface railroad shall on or before the twentieth of each month pay the employés thereof the wages earned by them during the preceding calendar month, unless any such employé shall be absent from his regular place of labor at the usual time of payment, in which case payment shall be made at any reasonable time thereafter upon demand." (Section 1.)

This was in 1895, as we have seen, and the statutes then provided for the monthly payment by a corporation operating a steam surface railroad to its employés and for a weekly payment by other corporations to their employés, so that up to that time any discrimination that had been made was made in favor of a corporation operating a steam surface railroad. This law has not been attacked as to its constitutionality at any time, so far as I have found. Then we have the condition arising in 1908, 13 years later, that a statute was passed, which is here attacked, which provides for payment in cash weekly to employés of practically all corporations in the state, except of corporations operating a steam surface railroad, which are required by it to be paid twice a month, so that, if corporations have a just complaint that they are not treated equally, the corporations entitled to make that complaint are not corporations operating a steam surface railroad.

During this time legislation has been had in many other states aside from New York along the lines of the statute here assailed. In many of these states it is now provided, and has been for some time, that all corporations must pay the wages of their employés weekly, in some states every two weeks, some states semimonthly, and in some states monthly. In the state of Massachusetts, in which this plaintiff's cars run, and in which it does business, weekly payments of employés is compelled by statute. It appears here that this plaintiff does business in many other of the states of the United States, so that it undoubtedly is familiar with the fact of the changes in the laws of those states

fixing a period at which which employés of railroad corporations must be paid, and making various short periods for such payments, and providing penalties for noncompliance with such statutes. The judicial decisions concerning those statutes in those various states and kindred labor statutes are in hopeless conflict. No good purpose could be served by attempting to reconcile them. From an examination of these decisions and those statutes it is apparent that the Legislature of the state of New York had access to and would be presumed to have knowledge of the facts of the progressive legislation that was being enacted in various places for what may be, perhaps, termed the better assurance to the employés of corporations that their wages would be frequently, regularly, and promptly paid. It is a recognized fact of which the court can take judicial notice that frequent conflicts have occurred between employers and employés in this and other states. Various corporations have combined, and from numerous smaller corporations a great corporation has grown. That is the fact in the case of the plaintiff. It has grown to its present size by combinations of smaller railroad corporations. As the size of the corporations increases and the number of employés increase, of necessity there is not that close contact on the part of the employer and employé that formerly obtained. The relation is more of a stranger. Hence it is that with the distributed employés on over 2,000 miles of plaintiff's railroad in this state it is not practical for the employés in all cases to apply to their employer for a change in the character of payment and in the time of payment as it would be were the railroad shorter, the employés less, and the employer more easily approachable.

This corporation now has in its service upward of 41,000 employés that it is alleged are subject to the provisions of these sections of the statute. These are the wage earners. Taking into consideration the number of persons in the families of these 41,000 wage earners who must be supported from the wages earned by those employed by this plaintiff, and the further fact that nine other large railroad corporations in this state have brought similar actions against the same defendant for the same purpose, one of which alleges that it has over 33,000 employés that will be affected by the provisions of this statute, and then taking into consideration the number of residents of this state who are dependent on the vast army of wage earners of these corporations, it will be seen that, if the statutes here assailed are class legislation, it is legislation for a very large class or portion of the people of the state of New York. These facts are all to be presumed to be accessible and within the knowledge of the Legislature in enacting these statutes. This corporation owes its existence to the powers delegated to it by compliance with the statute of the state of New York passed in pursuance of the Constitution of this state. We have seen that this Constitution reserves the right to alter or amend statutes applicable to corporations. It has been held to be a valid exercise of the legislative power to amend the laws affecting corporations, whether such amendments were directed to the corporation law or otherwise.

In Berea College v. Kentucky, 211 U. S. 45, 29 Sup. Ct. 33, 54 L. Ed. ——, a somewhat similar question to this was before the United

States Supreme Court, and in the course of its opinion the court held as follows:

"The language of the statute is not in terms an amendment, yet its effect is an amendment, and it would be resting too much on mere form to hold that a statute which in effect works a change in the terms of the charter is not to be considered as an amendment, because not so designated."

The Court of Appeals held in Lord v. Equitable Life Assurance Society, 194 N. Y. 212–232, 87 N. E. 443, 450, on this subject:

"We think the act of 1906, so far as it is now before us, is a valid exercise of legislative power, forbidden by neither state nor federal Constitution. The authorities relied upon are not directly in point, for the situation is without precedent, but it is clear that the tendency of authority, both state and national, is to hold that the Legislature has wide latitude of amendment when the general power is reserved, either by Constitution or statute."

See, also, cases cited in that case.

By the facts admitted in this case (upon which the case was tried, and is now being determined by me) it appears in the sixth paragraph thereof as follows:

"Substantially all of the persons employed on and prior to the 20th day of May, 1908, are still in plaintiff's employ and were and are employed with full knowledge of the fixed rule and regulation of the plaintiff which provided and still provides for the payment to such employés respectively on or before the 20th day of each month of the wages or salary due them for the previous month."

From this established fact the plaintiff argues that the provisions of this law interfere with the provisions of an existing contract, and are therefore unconstitutional. But the facts stated do not establish that the time of payment is such an ingredient or essential part of the contract of employment as would be affected by the provision providing for the semimonthly payment. It does not allege that the time of payment as now had by the company is a part of the contract, but it is alleged that the company had such a rule and regulation, and that the employé knew of it and entered into his contract with that end in view. So far as shown on this proceeding, the plaintiff had no contract with its employés by which it could compel them to continue in its service if they were disposed to quit, or by which the employé could compel the plaintiff to continue to furnish him labor if it desired to discharge him. In other words, these are simply contracts determinable upon the will of either party, and the time of payment is a mere incident to that contract, and not an essential part of it, so that this legislation does not interfere with the rights of either party under this contract.

It is also claimed on behalf of the plaintiff that it will be put to an expense aggregating the sum of $5,000 more per month by paying semimonthly than by paying monthly than it now has, and it alleges that this is a taking of its property without due process of law. The court will assume that any amendment to the corporation law which would require any further or additional reports would entail some extra expense upon it; yet numerous amendments of that kind have been and are constantly being made, and they have never been declared void for that reason, nor are they. The same means of ascertaining the progres-

sive trend of public sentiment, as evidenced by the operations of legislative bodies, that were accessible to the Legislature of the state of New York, were and are accessible to this plaintiff; yet it has so managed its business that 12 times in a year it owes to its employés 50 days' wages. This is a condition which the Legislature might well consider that the employés scattered over the 2,000 miles of its railroad, were practically unable to remedy, and that it properly called for legislative action for the improvement and betterment of the condition of a large class of citizens.

It may be that in its zeal to serve the public well and to earn dividends for its stockholders the plaintiff has neglected to keep its methods of paying its employés abreast with the improvements which it has undeniably effected in caring for its patrons and serving the interest of its owners. It may be that some other way than the historic pay car which now traverses the road at the end of every month could be invented if proper ingenuity and study were directed to that end. The plaintiff does a cash business as a carrier of passengers. Every person who procures a ticket must pay before he procures it. Its business of freight is very largely a cash business, so that it is in a position easily to pay cash, and the court will take judicial notice that this cash is received by the company not all from its New York terminal, from which it starts its pay car, but from its various stations along the road. The number of employés at many of these different stations is small. It might not be unreasonable for the Legislature to conclude that the employés reporting to a certain station could be paid in cash by the station agent there, except where repair or car shops are, as well as to have the cash receipts remitted to New York and then sent back along the line of the road. The requirement that the plaintiff must "pay" does not mean that the plaintiff must pursue its fleeing employés to remote parts of the state every 15 days and there compel them, however unwilling they might be, to accept their wage. There are two parties to any payment, in this case the plaintiff and its employé, and the employé must do his reasonable part in the transaction. The law does not compel nor expect impossibilities. It would be fully complied with by having the cash accessible to the employé somewhere near where his work is. The property of this railroad corporation is a property affected with a public use. It is a common carrier of freight and passengers, having obtained such powers as it possesses by virtue of statutes passed by the New York Legislature. Many of the employés of this corporation receive small wages. They must deal for the wants of themselves and their families with small retail storekeepers, and buy in small quantities, hence the possession of cash will be a great advantage to them in obtaining the necessaries of life and such luxuries as the extent of their wages and the number of persons dependent thereon will permit. In addition to the large number of people that we have seen are employed by this plaintiff and those dependent on them, the Legislature may well have taken into consideration the rights and needs of those storekeepers who supply them with their daily needs, and the desirability of a more frequent payment for the benefit of that class of citizens. The court cannot inquire, and has no means of ascertaining, all the reasons or motives that impelled the Legislature to pass

and the Governor to approve these statutes here attacked. The court cannot even determine if good judgment was exercised by the Legislature, but the court can, from facts proven and other facts of which it can take judicial cognizance, consider that there is a large class of people affected by this legislation, and that agitation has been had along similar lines in this and other states for many years; that a more restrictive law has been on the statute books for many years applying to other corporations, and its constitutionality not attacked; and that similar laws have been passed in other states and upheld, and from these facts conclude that a general demand for the passage of a law of this kind existed, and that the Legislature, in order to promote the general welfare of a large number of citizens, passed the acts here assailed.

The court will not determine that a law passed in pursuance of such a demand and after such an inquiry as to the Legislature would seem desirable and sufficient should be lightly interfered with. Judicial caprice should not be too hasty to charge legislative caprice. Courts should rather assume that in its own way and manner, and, as a condition precedent to any action, the Legislature had made a sufficient inquiry, recollecting that remedies for existing wrongs are to be provided by the Legislature, and not by the courts, and, if rightly provided, should be upheld by the courts.

I am of the opinion that these statutes are a valid exercise of the power reserved to the Legislature to amend laws applicable to charters of corporations of the nature of the plaintiff in this action and that the law is not unconstitutional.

A more difficult question, perhaps, is presented as to whether these statutes are a proper exercise of what is commonly referred to as the police power of the Legislature, which is a power outside of the Constitution. We have seen the large number of people who will be affected by these statutes, as to the time at which plaintiff's employés will receive their wages. It is for the interest of the state, of course, to see that its citizens are prosperous, healthy, and comfortable, and if the Legislature, after proper inquiry, thinks that the physical welfare of a large number of the citizens of this state would be promoted by a more frequent payment of the employés of steam surface railroad corporations, it is difficult to see why the courts should interfere with such a disposition. In many states such legislation has been upheld as a valid exercise of the police power.

In Holden v. Hardy, 169 U. S. 366, 392, 18 Sup. Ct. 383, 388, 42 L. Ed. 780, the United States Supreme Court upheld a statute of Utah providing that the period of employment of workingmen in all underground mines should be eight hours per day as being a valid exercise of the police power of the state, and not in violation of the provisions of the fourteenth amendment to the Constitution of the United States. The court quotes from the opinion of Chief Justice Shaw in the case of Commonwealth v. Alger, 7 Cush. (Mass.) 53, 84, as follows:

"We think it a settled principle, growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that its use may be so regulated, that it shall not be injurious to the equal enjoyment of others hav-

ing an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property in this commonwealth, as well that in the interior as that bordering on tide waters, is derived directly or indirectly from the government, and held subject to those general regulations, which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as will prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the Legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient."

The court says that this power legitimately exercised can neither be limited by contract nor bartered away by legislation. The court further says, on page 397 of 169 U. S., page 390 of 18 Sup. Ct. (42 L. Ed. 780):

"The Legislature has also recognized the fact, which the experience of legislators in many states has corroborated, that the proprietors of these establishments and their operatives do not stand upon an equality, and that their interests are, to a certain extent, conflicting. The former naturally desire to obtain as much labor as possible from their employés, while the latter are often induced by the fear of discharge to conform to regulations which their judgment, fairly exercised, would pronounce to be detrimental to their health or strength. In other words, the proprietors lay down the rules and the laborers are practically constrained to obey them. In such cases self-interest is often an unsafe guide, and the Legislature may properly interpose its authority."

It may not be improper to suggest in this connection that although the prosecution in this case was against the employer of labor, who apparently under the statute is the only one liable, his defense is not so much that his right to contract has been infringed upon, but that the act works a peculiar hardship to his employés, whose right to labor as long as they please is alleged to be thereby violated. The argument would certainly come with better grace and greater cogency from the latter class. But the fact that both parties are of full age and competent to contract does not necessarily deprive the state of the power to interfere where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself. "The state still retains an interest in his welfare, however reckless he may be. The whole is no greater than the sum of all the parts, and, when the individual health, safety, and welfare are sacrificed or neglected, the state must suffer."

The objection was also made that these statutes interfere with and constitute a restriction upon interstate commerce, and are therefore void under the commerce clause of the Constitution of the United States. Article 1, § 8. I do not see how they do so. Employés are employed by this corporation, which is a New York state corporation, and are paid by it. They would not render any poorer service if paid semimonthly instead of monthly, and as the plaintiff would, under these statutes, at all times owe its employés for 15 days' wages and for most of the time any number of days between 15 and 30, it cannot be said that requiring it to make this payment from 15 to 30 days after the wages were earned would so cripple the corporation that it could not carry out its interstate commerce engagements, nor that providing for such payment would in any way be an infringement of the commerce provision of the federal Constitution.

Considerable argument was had by the plaintiff that the statutes interfere with the freedom of contract, not so much on the part of the plaintiff as upon the part of its employés. As was said in Holden v. Hardy, supra, this objection might perhaps better come from the employés, and no one appeared before the court urging that they should not receive the benefit of this statute. It does not interfere with the freedom of contract, for the reason that the state in granting powers to a corporation can prescribe the terms upon which it may employ its employés, and it grants its charter with this restriction the same as it grants it with other restrictions and other benefits and advantages to it, and, as we have seen, may amend it. If the employés do not wish to work under the onerous provision of being required to accept their wages every 15 days, they can easily seek for and probably obtain employment elsewhere, but of this unwillingness the court has not heard.

The defendant is labor commissioner of New York state, and his jurisdiction does not extend beyond its borders. This law applies only to citizens of this state, and can be enforced only on behalf of its citizens. I think that the enactment of the statutes in question is a valid exercise of the police power possessed by the Legislature of this state and should be upheld.

It follows that the complaint should be dismissed, with costs.

Complaint dismissed.