Charles C. Lockwood,
Official Referee. The Brooklyn Citizen, an old newspaper, discontinued publication August 29,1947.
Its offices and plant had since 1886 been located in its own building at Fulton and Adams streets, which property was acquired by the city as part of the new civic center site in 1945. The Citizen has remained as a tenant in the property since the taking.
On April 8, 1948, the corporation obtained an order directing the employees, the stockholders and the unions representing the various employees to show cause why an order should not be made adjudicating and passing upon the validity of the claims of the said employees and unions; allowing or disallowing, fixing and determining said claims and, as fixed and determined, directing payment and satisfaction of said claims by the officers and directors of said The Brooklyn Citizen.
On May 3, 1948, the court at Special Term ordered that the proceeding be referred to an Official Referee to hear and determine.
The attorneys for the contending parties held conferences extending to November 16, 1948, and agreed upon schedules setting up in- detail the claims of the employees for severance and also for vacation pay.
Pending said conferences the hearing was adjourned from time to time at the request of all parties and finally heard December 3,1948.
The final briefs were filed February 1, 1949. The minutes were supplied February 7, 1949.
As to the claims of employees for severance pay the petitioner sets forth: ‘ ‘ The Brooklyn Citizen after a meeting of the stockholders, pursuant to Sec. 45, and 105 of the Stock Corporation Law, on August 25, 1947, after due notice, by vote, of holders *165 of record of more than two-thirds of the outstanding shares of said corporation, voted to discontinue publication and to file a certificate of dissolution. The certificate * * * was duly-filed; the corporation ceased to function and lost its corporate entity, except for the purpose of liquidating its assets and discharging its liabilities. In effect all positions and jobs of employment were wiped out and there was no dismissal or discharge, because, since all of said positions and jobs were abolished, there was nothing from which said employees could be dismissed or discharged * * *. Therefore it is urged that no severance pay should be awarded to any of the claimants ”.
The Newspaper Guild contract with The Brooklyn Citizen provides: “ Article V• — • Severance Pay: 2. Upon termination of employment by dismissal or discharge, an employee shall receive cash severance pay in a lump sum, equal to one week’s pay for each full six months of continuous and uninterrupted employment with the Publisher, such pay to be computed at the highest rate of salary received by the employee during his service with the Publisher. The maximum amount which any employee shall receive in severance pay shall be twenty-six (26) weeks’ pay.”
Petitioner asserts that the provision quoted contemplated at the time it was entered into a dismissal or discharge by The Brooklyn Citizen as a going concern and not the loss of positions due to a discontinuance of publication.
The Guild employees assert that: “ Termination of employment by suspension of publication and dissolution constitutes a discharge or dismissal requiring allowance of severance pay.”
The contract provides specifically that severance pay is to be allowed in case of ‘ ‘ dismissal or discharge. ’ ’
The authorities hold that termination of employment by a suspension of publication is a discharge and a dismissal. In Matter of Public Ledger (161 F. 2d 762) the court held that the bankruptcy of the Philadelphia Public Ledger with resultant suspension of publication constituted a discharge and the employees were entitled to severance pay, and that the severance pay demand is not based upon breach of contract, but is a claim within the terms of hiring.
In Montefalcone v. Banco Di Napoli (268 App. Div. 636) the defendant argued that the plaintiff was not entitled to severance pay because his employment was not terminated by the trust company but by intervention of the State through the Superintendent of Banks.
*166 However, the court said (supra, pp. 639-640): “whatever may have been the occasion for the ‘ severance ’, the fact remains that on the morning of December 11, 1941, he occupied the position of ‘ auditor ’, and, without fault on his part, he had ceased to occupy that position on the evening of that day. * * * he became entitled to the benefit of the additional compensation established for his benefit. Such ‘ severance pay ’ was not in any true sense damages, but constituted compensation earned, the amount of which was measured by the extent of previous services.”
In McNamara v. Mayor of City of New York (152 N. Y. 228) the court also held that a suspension was the equivalent of a discharge.
Severance pay is provided in order to assure a worker whose employment is terminated funds to depend on while he seeks another job.
The court holds the Guild members are entitled to severance pay in the amounts stated in the exhibit.
The court also holds that employees who are not Guild members are within the bargaining unit and are entitled to severance, pay.
This holding is supported by section 9 of the National Labor Relations Act (U. S. Code, tit. 29, § 159) which provides in subdivision (a) that the collective bargaining representative designated by the majority of the employees ‘ ‘ shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment ”. In National Labor Relations Bd. v. Hobbs Co. (132 F. 2d 249, 251) the court said that a union which had obtained authorization from eleven of eighteen employees was, under the National Labor Relations Act, the exclusive bargaining agent for them all.
The Citizen’s contract with the Guild provides that it was made ‘ ‘ on behalf of all the employees of the Brooklyn Citizen in the editorial, commercial (including advertising, business and circulation sub-departments) and miscellaneous departments including all of the employees of the Publisher, excluding only those now members of recognized craft unions in the mechanical departments and those hereinafter designated.”
The contract applies to all employees not specifically excepted. Therefore, William J. Punch, Anthony J. Casey, Leonard Scotto, John Fasano and Josephine Hawthorne should be allowed their claims for severance pay.
*167 Petitioner’s claim that article III of the contract exempts these people from the contract, its privileges and duties, is incorrect. Article III only exempts them from union membership in an otherwise closed shop. This is further emphasized by the fact that at the time of discontinuance of publication four of these people were department heads. The Guild contract provided a minimum wage scale for department heads on page five.
David J. McLean, James J. Dempsey and Andrew McLean filed no claims but petitioner’s counsel contends they, as salaried employees, are entitled to pay if it be allowed to Punch, Casey, Scotto, Pasano and Hawthorne.
David J. McLean was publisher on salary, president of the corporation and one of the board of five directors and a stockholder. His employment did not terminate when he, on salary, voted to cease publication and to liquidate the company. He continued to draw pay and still draws pay as a liquidator.
Andrew McLean was advertising manager, director, treasurer and stockholder and has continued under salary in the liquidation.
James J. Dempsey was a salaried editor and also a director and the secretary of the company and a stockholder. He signed the labor contracts for the employer company.
These three as officers, directors and stockholders were the operating heads — the managers for the stockholders. They negotiated labor contracts, did the hiring, the laying off, buying, formulated policies and controlled the “ Citizen ”. They are in the employer status and cannot be considered employees under these labor contracts.
In American Steel Foundries v. National Labor Relations Bd. (158 P. 2d 896, 898) the court said: “ the personnel that acted in the interest of the employer in matters envisaged by the Act would be considered to be in the employer status.” See, also, Matter of Macton Textile Processing Co. (72 N. Y. S. 2d 553); Matter of Stryker (158 N. Y. 526), and Matter of Lyle v. Lyle Cider & Vinegar Co. (243 N. Y. 257).
The claim of Gordon S. Hollywood for ten weeks’ severance pay (computed on the basis of five years’ service), is granted pursuant to article III of the Guild contract, which provides for leave of absence for service in the armed forces, which leaves are counted as employed time for purposes of computing severance pay.
As to vacation pay, provided by article "VT of the Guild contract, William J, Punch is allowed four days, Saul Freilich one *168 week, Gordon S. Hollywood one week, and Murray Rosenberg one day, for the same reasons they were held entitled to severance pay.
This is supported by Matter of Public Ledger (161 F. 2d 762, supra), where the court quoted at length from the decision of the Second Circuit in Matter of Wil-Low Cafeterias (111 F. 2d 429, 432) and followed the holding there that accrued vacation pay was a priority claim in the same manner and for the same reason as severance pay.
Petitioner’s identification of severance pay with vacation pay and its attempt to offset one against the other is error. They are two separate and distinct terms, both by definition and in the wording and meaning of the contract.
As to claimants under the Typographical Union No. 6 contract, section 23, page 14, provides (par. A) that: “ Employees who have held situations during an entire calendar year shall be entitled to three weeks vacation with pay during the succeeding calendar year provided they are employees of the office at the time of taking their vacation.” Paragraph (b) provides that employees who worked part of a calendar year are entitled during the following year to one day’s vacation with pay for each seventeen days worked, provided they are employed at the time of taking their vacations.
Petitioner contends that these union members were not employed by the Citizen after it suspended and therefore the sections quoted above preclude any vacation allowances.
The purpose of the requirement that the employee be working at the time he takes his vacation was to prevent any employee who quit voluntarily from claiming a vacation allowance.
It would be narrow interpretation of this clause which would allow the Citizen to have the services of its employees for nearly two thirds of 1947, dismiss them, and then deny them their earned vacations because they were not “ employees of the office at the time of taking their vacations. ’ ’
Vacation allowances should be prorated as is provided for in paragraph (b) of the contract.
Employees who were members of Big Six are also entitled to severance pay for the reasons hereinbefore stated.
Section 24 of their contract (p. 16) provides: “ In the event of merger, consolidation, or permanent suspension of any news paper covered by this agreement all regular situation holders with one year or more of service as regular situation holders, who by virtue of the merger, consolidation, or permanent suspen *169 sion are deprived of regular situations shall receive the cash equivalent of 2 weeks (10 shifts) pay at their current rate.”
This provision is clear. In no way can the severance pay it provides for be confused with vacation pay.
The stereotypers are entitled to vacation pay to be computed on a prorata basis as provided for on page 6, paragraphs (a) and (b), of their contract with the Citizen.
As to the Mail Deliverers’ Union, employees’ vacation pay should be prorated and allowed as per the contract.
As to severance or notice pay, section IV-E, page 19, of the contract provides: “ There shall be no lay-off except on two weeks notice to the Union and to the employees affected.”
The purpose of such notice is to give the employee a chance to find another job. The Citizen failed to give such notice and these men are allowed two weeks’ notice pay.
We cannot agree with petitioner’s argument that the notice provision requires two weeks ’ work on the part of the employee after notice has been given and before termination of employment, and therefore the two weeks’ notice pay should be subtracted from the vacation allowance.
By failing to give notice as per the contract terms petitioner deprived itself of the two weeks’ services to which it would have been entitled. However, it must allow notice pay so as to give the employees the security provided for in their contract, and it must pay the vacation allowances already earned by the employees which are a separate and distinct item.
For the same reasons as above the claims of the members of Printing Pressmen’s Union No. 2 should be granted. The vacation clauses (p. 12, § 25) and the notice clauses (p. 8, § 11) are substantially the same as those discussed above.
As to the claimant under the Mailers Union No. 6, Robert V. Buete is entitled to six days’ vacation pay and to one week’s termination pay, under sections 8 and 21 of his Union’s contract with the Citizen.
The claim of Alfred Gr. Brintrup and the claim for vacation pay past due of the estate of Anthony Morotta, who died before the dissolution of the Citizen, are allowed.
Submit judgment on five days ’ notice.