THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES VETRI, Appellant.

Argued December 1, 1955; decided December 28, 1955.

*Irving T. Wolfson* and *Abraham Shalo* for appellant.  I. The purpose of the penal statute is to assure weekly payment of cash wages and not incidental contractual benefits.  (*People* v. *Grass,* 257 App. Div. 1; *New York Central & H. R. R. R. Co.* v. *Williams,* 64 Misc. 15.)  II. To hold vacation pay under the contract to be wages would violate the labor statute.  III. Courts

may not by forced construction create a crime. (*People* v. *Rowan*, 179 Misc. 225; *People* v. *Werner*, 174 N. Y. 132; *People* v. *Taylor*, 192 N. Y. 398; *People* v. *Phyfe*, 136 N. Y. 554; *People* v. *Stoll*, 242 N. Y. 453; *People* v. *Cohen*, 94 Misc. 355; *Matter of Stryker*, 158 N. Y. 526; *Austin* v. *City of New York*, 258 N. Y. 113; *People* v. *Interborough R. T. Co.*, 169 App. Div. 32.) IV. Criminal statutes must be so explicit that all men subject to their penalties may know what acts are prohibited. (*People* v. *Grogan*, 260 N. Y. 138; *United States* v. *Brewer*, 139 U. S. 278.) V. To hold that failure to provide certain " fringe " benefits is a crime would have the effect of ousting the civil courts of their traditional jurisdiction and substituting the criminal courts in their place.

*Edward S. Silver, District Attorney* (*David Diamond* of counsel), for respondent. The " vacation pay " referred to in the collective bargaining agreement herein constitutes " wages earned " within the purview of subdivision 2 of section 196 of the Labor Law. (*Matter of Stryker*, 158 N. Y. 526; *Seidenberg* v. *Duboff & Davies*, 143 Misc. 167; *Matter of Wil-low Cafeterias*, 111 F. 2d 429; *Matter of Public Ledger*, 161 F. 2d 762; *Matter of New York State Labor Relations Bd.* v. *Metropolitan Life Ins. Co.*, 183 Misc. 1064, 269 App. Div. 934, 295 N. Y. 839.)

*Sidney Elliott Cohn, Daniel W. Meyer* and *Jean Taylor* for Truck Drivers Local Union No. 807, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. of L., and others, *amici curiæ*, in support of respondent's position. I. Vacation pay is an additional wage and represents compensation for services rendered by the employees to the employer. Hence vacation pay constitutes wages within the meaning of section 1272 of the Penal Law and section 196 of the Labor Law. (*Matter of New England Thread Co.*, 158 F. 788; *Matter of Wil-low Cafeterias*, 111 F. 2d 429; *Matter of Public Ledger*, 161 F. 2d 762; *Matter of Ciarla* v. *Solvay Process Co.*, 184 App. Div. 629, 226 N. Y. 566; *Matter of Schenectady Ry. Co.*, 93 F. Supp. 67.) II. The fact that vacation pay is not payable weekly does not remove it from the category of " wages " within the meaning of section 1272 of the Penal Law and section 196 of the Labor Law.

CoHN, J. Pursuant to leave granted by a Justice of the Appellate Division, Second Department, the defendant appeals from an order and judgment of that court affirming a judgment of a Court of Special Sessions held by a City Magistrate, Borough of Brooklyn, convicting him of a violation of section 1272 of the Penal Law in that he failed to pay the wages of his employees in accordance with the provisions of subdivision 2 of section 196 of the Labor Law.

On September 24, 1952, defendant entered into a two-year collective bargaining contract with Truck Drivers Local Union No. 807, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Among other things the contract provided for vacations, the length of which was dependent upon the number of days worked during the 12-month period ending on March 31st of each year. For the first 120 workdays, one day of vacation was allowed for each 30 days. Thereafter vacation days accrued on the basis of 15 or 20 additional workdays until a maximum of a 14-day vacation period was reached. The agreement required the employer to post the vacation schedule not later than May 1st.

While the agreement was in effect, defendant discontinued business. He made all payments required under the agreement save for the accrued vacations of six of his employees ranging from four to fourteen days. Upon complaint of these employees who were members of the union, defendant was convicted on an information charging him with a violation of subdivision 2 of section 196 of the Labor Law in that on March 31, 1954, he failed to pay the wages due the complainants who were employed by him '' for various periods during the past year ''.

So far as here pertinent, subdivision 2 of section 196 of the Labor Law provides: '' Every person carrying on a business by lease or otherwise * * * shall pay weekly to each employee the wages earned to a day not more than six days prior to the date of such payment.''

The relevant portion of section 1272 of the Penal Law provides: '' Each person * * * who does not pay the wages of all his * * * employees in accordance with the provisions of the labor law is * * * guilty of a misdemeanor, and upon conviction therefor, shall be fined not less than one hundred nor more than ten thousand dollars or imprisoned for

not more than one year, or punished by both such fine and imprisonment for each such offense.''

The sole question presented by the appeal is whether vacation pay constitutes wages within the meaning of the above-quoted sections of the Labor Law and the Penal Law. The trial court held that since vacation pay represented part of the employee's compensation for services rendered, it fell within the purview of the statutes under consideration.

The requirement that an employer pay his employees their wages weekly was first imposed in 1890 (L. 1890, ch. 388, § 1). After several amendments it was carried over as section 10 of the Labor Law (L. 1897, ch. 415), from which the present section 196 was derived. The purpose of the law was to assure prompt payment of daily wages to those employed in a subordinate capacity and who depended upon their earnings for support on a per diem rather than on a salary basis. (*Erie R. R. Co.* v. *Williams,* 233 U. S. 685, 704.) It was not intended to include the so-called fringe benefits found in present-day collective bargaining contracts, which were relatively foreign to per diem hirings at the time of the original enactment of the statute.

In the present case the daily and hourly rates of pay are set forth in section 1 of the collective bargaining contract which deals exclusively with '' wages ''. Failure to pay the amounts prescribed under that section within six days after they are earned, and not a failure to pay vacation money, is what would constitute a violation of the statute.

Section 196 of the Labor Law is a police power regulation intended for the protection of those who are dependent upon their wages for sustenance (*New York Central & H. R. R. R. Co.* v. *Williams,* 64 Misc. 15, 27, 28, affd. 136 App. Div. 904, affd. 199 N. Y. 108, affd. *sub nom. Erie R. R. Co.* v. *Williams,* 233 U. S. 685, *supra*). A violation of its provisions is *malum prohibitum* and not *malum in se,* and, as such, the statute should be '' strictly construed ''. (*People* v. *Taylor,* 192 N. Y. 398, 400; *People* v. *Werner,* 174 N. Y. 132, 134.) '' Acts otherwise innocent and lawful do not become criminal unless there is a clear and positive expression of legislative intent to make them criminal ''. (*People* v. *Adamkiewicz,* 298 N. Y. 176, 179.) See, also, *People* v. *Benc* (288 N. Y. 318, 323) and *People* v. *Grogan* (260 N. Y. 138, 145). In *People* v. *Shakun* (251 N. Y. 107, 113–

114) the doctrine is set forth as follows: "It is well settled that a criminal statute should narrowly be construed; that acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. (*People* v. *Phyfe,* 136 N. Y. 554; *Burks* v. *Bosso,* 180 N. Y. 341.) In *People* v. *Phyfe* the court said: ' The citizen is entitled to an unequivocal warning before conduct on his part, which is not *malum in se,* can be made the occasion of a deprivation of his liberty or property.' "

Mere failure to pay wages within the time prescribed by the statute automatically constitutes a violation of the law and exposes the employer to criminal prosecution (*People* v. *Werner, supra*; *People* v. *Kibler,* 106 N. Y. 321, 323) ; hence the language of the statute is to be given the meaning it conveys to the ordinary employer as to what must be done and what must be avoided, to the end that he may know how to comply with its requirements. (*People* v. *O'Gorman,* 274 N. Y. 284, 287.) As pointed out in *United States* v. *Brewer* (139 U. S. 278, 288): " Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. * * * Before a man can be punished, his case must be plainly and unmistakably within the statute."

If the term " wages " as used in the Labor Law is to be construed according to its fair import, " vacation pay " cannot be embraced in that term by implication. The courts may not by forced construction create a crime. (*People* v. *Stoll,* 242 N. Y. 453, 463.)

In support of the People's position, reliance is placed upon section 21 of the Penal Law, which provides: " The rule that a penal statute is to be strictly construed does not apply to this chapter [Penal Law] ". However, it is to be noted that the section goes on to state that its provisions " must be construed according to the fair import of their terms, to promote justice and effect the objects of the law." A construction of the language of subdivision 2 of section 196 of the Labor Law which makes penal that which is not plainly written in the statute, would hardly promote justice or effect the object of the law which is to compel prompt payment of daily wages to the small wage earner. (*People* v. *Grass,* 257 App. Div. 1; *New York Central & H. R. R. R. Co.* v. *Williams, supra,* p. 26.)

That the Legislature intended " wages " as used in the Labor Law to mean the daily rate of pay earned during the preceding six days is forcefully demonstrated by recent amendments to section 71 of the Stock Corporation Law and section 22 of the Debtor and Creditor Law. By one act (L. 1952, ch. 794) the Legislature amended both those sections by defining " wages " as used therein to include all benefits payable by an employer for personal services rendered by an employee, specifically including vacation, holiday and severance pay; payments into insurance, welfare or pension funds; and any other amounts due from or payable by the employer. However, the definition of " wages " effected by the amendment is expressly limited to the purposes of those two sections. This limitation coupled with the failure to include, in the amending statute, a similar expanded definition for the word " wages " as used in the Labor Law is significant. It shows that " wages " as used in the Labor Law was not intended to include vacation pay or other fringe benefits but was to be restricted to the basic rate of pay.

To be sure, the term " wages " broadly interpreted includes all of the benefits, monetary or otherwise, which an employee derives from a master and servant relationship. However, the sense in which it is used in a given statute depends not only upon the wording of the statute but upon the purpose of the law as well. The liberal interpretation placed upon it in actions involving civil remedies of employees does not apply to the word as used in a criminal statute. The decisions in civil actions are based upon different considerations and they may not enlarge an employer's criminal responsibility beyond that indicated by the criminal statute itself.

It is true that for the purpose of giving priority to wage earners over other creditors under the Bankruptcy Act (§ 64, subd. [a], par. [2], U. S. Code, tit. 11, § 104, subd. [a], par. [2]) the Federal courts have held that " A vacation with pay is in effect additional wages " (*Matter of Wil-low Cafeterias,* 111 F. 2d 429, 432); so too with respect to severance pay (*Matter of Public Ledger,* 161 F. 2d 762). See, also, *Matter of Brooklyn Citizen* (1 Misc 2d 162, 168). In computing the amount to be awarded an injured employee under the New York Workmen's Compensation Law, bonuses were held to be part of the

employee's wages. (*Matter of Ciarla* v. *Solvay Process Co.*, 184 App. Div. 629, affd. 226 N. Y. 566) and, similarly, with respect to tips received by an employee from his employer's customers. (*Matter of Sloat* v. *Rochester Taxicab Co.*, 177 App. Div. 57, affd. 221 N. Y. 491; *Matter of Bryant* v. *Pullman Co.*, 188 App. Div. 311, affd. 228 N. Y. 579.) Though these cases involving only civil remedies construe wages to include vacation pay, severance pay, voluntary bonuses and tips, the same construction may not be extended to penal provisions where there is no statutory obligation placed on the employer in the Labor Law or in the Penal Law to make such payments.

Moreover, under the welfare provisions of the collective bargaining contract here, the employer is required to provide and maintain insurance and hospitalization for the benefit of his employees and their families. These benefits accrue immediately upon employment and before any work is performed. While they too fall within the broad interpretation of " wages ", they nevertheless do not constitute wages earned six days prior to the date of payment within the meaning of the Labor Law. It would appear, therefore, that the word " wages " as used in the Labor Law was not intended to include every type of benefit derived by an employee from a master-servant relationship and which might fall within the general category of wages.

The law affords wage earners ample civil remedies for the purpose of assuring them full payment of all additional benefits accruing to them under their contract of employment. If the Legislature desires to provide that failure to pay vacation moneys or other benefits due an employee be deemed criminal, this purpose can readily be effected by appropriate amendment to the Labor Law or to the Penal Law. Under the language of these statutes as now written, defendant was guilty of no criminal act.

Accordingly, the judgment appealed from should be reversed and the information dismissed.

BURKE, J. (dissenting). The defendant was convicted of a violation of the provisions of subdivision 2 of section 196 of the Labor Law of the State of New York in that, on March 31, 1954, he failed to pay the wages due six complainants who were employed by him " for various periods during the past year ".

A collective bargaining agreement to govern hours, wages and working conditions was entered into between the defendant and Truck Drivers Local Union No. 807, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, affiliated with the American Federation of Labor, Central Trades and Labor Council, and Building Trades Council of New York which provided among other things for vacation pay at a rate of one day's vacation pay for the first thirty days' work during a calendar year ending March 31st, up to fourteen days' vacation with pay for 235 days or more of work during the year. The complainants are members of the union and their claims arise out of a failure of the defendant employer to pay moneys due for vacations at the time he closed his business.

Courts have construed the term " wages " to include vacation with pay. (*Matter of Wil-low Cafeterias,* 111 F. 2d 429, 432; *Matter of Public Ledger,* 161 F. 2d 762; *Matter of Brooklyn Citizen,* 1 Misc 2d 162.)

The Legislature of this State in 1952 (L. 1952, ch. 794) amended both section 71 of the Stock Corporation Law and section 22 of the Debtor and Creditor Law to include a definition of wages, which specifically included vacation pay. The courts and the Legislature have recognized that vacation pay is a part of wages.

The question before us is whether " vacation pay " is " wages " within the meaning of section 196 of the Labor Law and section 1272 of the Penal Law. Section 1272 of the Penal Law and section 196 of the Labor Law are correlative. They were enacted to protect employees by insuring the prompt and expeditious payment of their wages.

Subdivision 2 of section 196 of the Labor Law provides in its pertinent parts: " Every person carrying on a business by lease or otherwise * * * shall pay weekly to each employee the wages earned to a day not more than six days prior to the date of such payment ".

Section 1272 of the Penal Law, in its pertinent parts, provides: " Each person, copartnership, corporation or joint-stock association carrying on a business by lease or otherwise, who does not pay the wages of all his or its employees in accordance with the provisions of the labor law is * * * guilty of a misdemeanor ".

The defendant contends that the word " weekly " was inserted in the Labor Law statute because the Legislature intended it to apply only to wages earned to a day not more than six days prior to the day of payment and not to any other form of wages, particularly wages payable in *advance*. The word " weekly " applies to all wages earned. Hence we must determine what wages include and when wages are deemed earned. We must look to the terms " wages " and " earned ". The statute does not forbid advance payment of wages. It simply provides that wages are due and payable weekly as earned. In this case a definite period was fixed by agreement when vacation pay would be deemed earned and would be due. It is only at that time that the word " weekly " becomes important. The agreement provided for the payment to be made in *advance* of the vacation for days' pay *earned* prior to the date of payment. Even though the schedule provided for one day paid vacation for a fixed number of days of work, where the employee agreed that his vacation pay is to be paid at the commencement of the vacation period, the employee cannot demand payment of the vacation pay prior to the time stipulated in the contract (except when the employer goes out of business) and the employer has no obligation to pay it prior to that time, as the wages are accruing during the course of the year, but are not " earned " within the meaning of section 196 of the Labor Law until the employee under the terms of the agreement becomes entitled to receive it. The employer cannot be prosecuted under the statute until six days after the pay was earned and became due and payable. The agreement is relied upon by the employer as a defense only to determine when the wages are earned and due. It is not relied upon to show good faith or negate any criminal intent. It is conceded no intent is necessary.

The agreement for accumulation of vacation pay is not a violation of subdivision 3 of section 196 of the Labor Law. The employee in this case is not required as a condition of employment to accept wages at periods other than weekly. Here the employer, at the request of the employee, was required to pay for vacations in advance of the vacation period but for days' pay earned prior thereto. Since the employer went out of business before the summer vacation and refused to pay on the

ground of lack of funds, the due date of the payment of the vacation pay was accelerated.

Although vacation pay is paid as compensation for services already rendered, its purpose is to provide for the support of employees during their vacation. Granted that the statute should be strictly construed, we cannot escape the fact that the contemporary, natural and obvious meaning of the term "wages" includes vacation pay. Certainly an employer of average intelligence would not assume it to have any other meaning. The purpose of the statute is to enable employees to prosecute employers who fail to pay them their wages. Therefore, we think the employer's failure to pay the wages to cover the vacations constitutes a violation of section 1272 of the Penal Law to the same extent as the failure to pay the weekly wages.

It is conceded that the sanctions imposed by the statutes, section 1272 of the Penal Law and section 196 of the Labor Law, were designed to help earners of small wages who needed cash for their day-to-day living expenses. Since there can be no question that the wages due for the vacation period were earned, there is no basis for adopting a construction of the statute which would limit the sanctions in such a way as to relegate the wage earner in the event of a failure of the employer to pay part of the earnings (vacation pay), to a civil suit, while permitting the use of sanctions of the penal statute for a failure to pay the remainder of the earnings (weekly wages). When a basic question of public policy is involved we cannot impute such a mutually exclusive intent to the Legislature.

The circumstance in this case is a cogent example of the precise problem the Legislature intended to prevent. The defendant employer pleaded inability to pay. Inability to pay the wages earned for vacation cannot be distinguished from an inability to pay the wages earned day-by-day. The deprivation of earnings in either case is real. To forestall such losses the State by statute holds employers to a standard of social justice in their dealing with workmen. The attainment of the aims of the statute would be frustrated by other than a reasonable interpretation.

The construction urged by the defendant is not only technical but is in conflict with authority.

In *Hudson Riv. Tel. Co.* v. *Watervliet Turnpike & Ry. Co.* (135 N. Y. 393, 403–404) we said: " The words of the statute are to be interpreted according to their natural and obvious meaning, and, as the terms employed are not ambiguous, extrinsic facts are not available to restrict the authority which it plainly confers. The language, literally construed, includes undiscovered, as well as existing modes of operation  *  *  *. It would be an unjust reflection upon the wisdom and intelligence of the law-making body to assume that they intended to confine the scope of the legislation to the present, and to exclude all considerations for the developments of the future."

In *People* v. *Hines* (284 N. Y. 92, 104) this court held that a defendant may be prosecuted under a gambling statute which was enacted before a gambling game came into being. It is not necessary, we said, to " re-enact over again the same comprehensive statute ". By giving words employed in the statute their ordinary and usual current meaning, we do not make acts, otherwise innocent and lawful, crimes.

And only recently in *Matter of Di Brizzi* (*Proskauer*) (303 N. Y. 206 [1951]), this court upheld the use of a statute (Executive Law, § 62, subd. 8, now § 63, subd. 8) which was originally enacted a few weeks after our entry into World War I as a " Peace and Safety Act " (L. 1917, ch. 595), to permit the creation of a " New York State Crime Commission ".

Finally in *People* v. *Morton* (308 N. Y. 96) we specifically ruled that penal statutes, without necessity of amendment, may, in view of changes in other statutory law, make criminal, conduct which prior to these changes was not proscribed. (Stock Corporation Law, § 71; Debtor and Creditor Law, § 22.)

We should not apply one rule of construction when property rights or civil order or public safety are involved and a different rule of construction when the rights of workmen are involved. The rule heretofore followed in the cases cited above is clearly applicable here as section 21 of the Penal Law provides: " § 21. *General rules of construction of this chapter.* The rule that a penal statute is to be strictly construed does not apply to this chapter or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, to promote justice and effect the objects of the law."

The judgment of the Appellate Division should be affirmed.

FULD, FROESSEL and VAN VOORHIS, JJ., concur with COHN, J.*; BURKE, J., dissents in an opinion in which CONWAY, Ch. J., concurs; DESMOND and DYE, JJ., taking no part.

Judgments reversed, etc.

* Designated pursuant to section 5 of article VI of the State Constitution in the temporary absence of DESMOND and DYE, JJ.