OPINION OF THE COURT
Eli H. Mellan, J.
The defendant appeared pro se before this court and pro *515 ceeded to trial on a charge of violation of subdivision (a) of section 1210 of the Vehicle and Traffic Law which reads as follows: "No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key from the vehicle, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway, provided, however, the provision for removing the key from the vehicle shall not require the removal of keys hidden from sight about the vehicle for convenience or emergency.”
The facts in the case as revealed during the course of the trial were rather simple and not much in contention. The witness for the People testified that he observed the defendant exit from the vehicle leaving the engine in operation and proceeded to walk away from the vehicle, when the vehicle commenced in motion, reversed itself, hit a curb, mounted a sidewalk, struck some bushes and a mailbox. No person was indicated to have been in the vicinity at the time or to have been threatened or have sustained any physical injury but there was ensuing property damage. The occurrence was on June 29, 1978, a Thursday, at approximately 5:40 p.m. in the area within the proximity of the post office which would indicate it to have been a place normally attended by members of the public.
The defendant being an attorney did not dispute the facts in any strenuous manner and did in fact confirm that he was in the process of crossing the street after having left the vehicle as testified to by the officer in behalf of the People, when to his astonishment he observed the afore-mentioned described action by the defendant’s vehicle.
The defendant’s major argument rested on a twofold defense: (1) that the result of the action of the vehicle was due to a defect in the mechanism for which he was not responsible and (2) that the section under which he is being charged is found to be unconstitutional.
The defendant sought to urge upon the court that the court should take judicial notice of certain newspaper articles describing defects in automobile mechanisms which articles may or may not have been relevant to the defect involved in the instant case. Nevertheless, no extensive legal authority needs to be cited to support the conclusion that newspaper clippings are not admissible in evidence nor are they appropriately *516 subject matter to be admissible in evidence by means of judicial notice. Furthermore, the court found no need to make any determination, nor did the court make any determination with reference to whether or not the subsequent motion of the vehicle which may have endangered person and property was due to any defect in the vehicle itself. The action as it appeared before the court lent itself to a decision on completely other grounds and bases.
The issues of negligence and civil liability were left for other possible actions and proceedings and were not considered in this vehicle and traffic violation proceeding.
As to the contention regarding unconstitutionality of the section of law involved, the defendant cited the case of People v Hammond (14 Misc 2d 607, 608), decided October 20, 1958 in the City Court of Corning, which held that this new section effective July 1, 1958, shortly before this decision, was unconstitutional because as stated in the decision: "The purpose of the statute is not stated. The most apparent objective, or continued effect, of the provisions at issue is to curtail the theft of vehicles both by removing a temptation, and by making the theft more difficult.”
It seems to this court that the cited decision totally neglects to consider the safety and danger to people including children, and property. Furthermore, without exploring the legislative intent, it would seem to be inappropriate to determine the purpose of a statute except by the express meaning of the words contained therein.
The court in that decision further went on to state (People v Hammond, supra, p 608) that in that court’s opinion "if an individual wants to be careless with his property — for example, wants to leave his house unlocked at night or his pocketbook in the middle on the street — it is his legal right to do so. The fact that such an act may unwittingly invite or cause another to commit a crime is not sufficient grounds to make the first individual guilty of a crime, or to subject him to criminal penalties, as would be the case here.” This court does not agree with that course of reasoning. The fact that one may carelessly leave his property to be illegally removed from him would not necessarily exonorate either the negligent individual or the one encouraged by the negligence to commit a crime.
Were the above-cited case to have remained in its lonely state of dissertation, it would have remained of less interest to *517 the court but on review in the Steuben County Court on February 26, 1959, Judge Domenick L. Gabrielli wrote an opinion affirming the conclusion of unconstitutionality. (People v Hammond, 15 Misc 2d 724.) It is interesting to note that in the numerous decisions which occurred since that date which are listed in the annotations of this statute covering approximately 15 years after the decision affirming the lower court’s opinion of unconstitutionality, the said statute continued to be applied with amendments without any further finding of unconstitutionality. The pivotal language of the statute involved is that the person should not permit a motor vehicle to stand "unattended without first stopping the engine, locking the ignition, removing the key from the vehicle”. It is the leaving unattended issue which is basic to the determination. In the instant case the court was impelled to determine that the defendant having left the vehicle with the engine running and with the key in the ignition and proceeded to cross the street, having traversed some 15 feet or more, in so doing, he left the vehicle unattended.
Judge Gabrielli’s decision appeared to turn on the language contained in the statute as it then existed concerning "removing the key”. The court stated that the statute merely speaks of removing the key but goes no further and the removal of the key from the ignition and placing it on the seat of the vehicle or placing it on the dashboard or floor thereof rendered the language of this statute too vague and lacking in specific meaning to be applied.
The court held that a traffic infraction is subject to the general rules of the criminal law in that it must be examined to determine whether the statute in question being "criminal in nature” (People v Hammond, 15 Misc 2d 724, 725, supra), is sufficiently clear to give persons unequivocal warning of the rule to be obeyed. (People v Hildebrandt, 308 NY 397; People v Vetri, 309 NY 401.)
However, whatever vagueness may have existed, if at all in 1959, has certainly currently been eliminated by amendment effective October 1, 1967, when the words were inserted in the cited statutory provision "from the vehicle”. It is totally clear it was incumbent upon the person driving the vehicle or in charge of the motor vehicle not only to refrain from leaving a vehicle unattended without first stopping the engine but that if he did so and failed to lock the ignition "removing the key from the vehicle,” he would be violating the provision of law.
*518 The law even further provides the separate condition that "the provision for removing the key from the vehicle shall not require the removal of keys hidden from sight about the vehicle for convenience or emergency.”
Thus, having left the vehicle unattended without first stopping the engine or locking the ignition and without removing the key from the vehicle and having proceeded to walk away from the vehicle, the defendant clearly violated the statute and the court finds no bases for determining it to be unconstitutional, vague or unenforceable.
In making this determination the court is cognizant of the fact that there can be other issues to be derived from this set of circumstances and facts involving questions of negligence or liability which would remain to be determined in other actions and proceedings since the issues of negligence are not totally consistent with or coterminous, with the questions of violation of this Vehicle and Traffic Law infraction. On the contrary as demonstrated in the case of Kass v Schneiderman (21 Mise 2d 518) the questions of negligence emanating from such facts and circumstances could be determined either on the basis of statutory negligence resulting from the infraction of the statutory or common-law negligence all of which could result in issues remaining to be determined by a jury concerned with questions of proximate cause, negligence, etc.
Thus in determining the issues in this traffic infraction trial, the court did not deal with or concern itself with questions of negligence nor with questions of whether or not the resulting damages, if any, occurred due to a defect in the vehicle. If in fact the vehicle reversed itself because of some inherent defect, that did not deter the court from finding the defendant guilty of the infraction in leaving the vehicle unattended under the facts and circumstances herein described.