Burke, J.
Defendant is the owner of a 30-acre tract of land in the Town of Vestal. Twenty acres were leased to his son on February 1,1954 for an indefinite term which can be terminated by a 60-day notice given by either party; the agreed rent is $1 per month as contained in a written lease. On the demised premises, the son has stored approximately 100 motor vehicles which may be described fairly as wrecks.
*288 Subsequent to the execution of the lease, in 1966, 'an ordinance was enacted (later re-enacted as a local law) which prohibits the open storage of inoperable vehicles within the Town of Vestal. The ordinance, in pertinent part, reads as follows:
‘ ‘ A. Purpose.
‘ ‘ A clean, wholesome, attractive environment is declared to be of importance to the health and safety of the inhabitants and the safeguarding of their material rights against unwarrantable invasion and, in addition, such an environment is deemed essential to the maintenance and continued development of the economy of the Town and the general welfare of its citizens. The unrestrained accumulation of motor vehicles not in operating condition is a hazard to such health, safety and welfare of citizens of the Town, necessitating the regulation,, restraint and elimination thereof.
•M, 4fe •Jr *jr *jr
“ 0. Restrictions.
“ Open storage of one (1) or more motor vehicles which are not in operating condition for legal use on the public highways shall not be permitted on private property within the Town of Vestal.
“ D. Notice.
“ The Town Police Department shall give written notice by registered mail to the owner of any property on which there is openly stored one or more such inoperative motor vehicles. Such notice shall provide that the property owner, regardless of ownership of the motor vehicle or vehicles, shall remove the same within ten days from the receipt of such notice.” (Town of Vestal Ordinance, § 4A-67.)
Written notice was given to defendant owner to remove these vehicles, and upon his failure to comply, he was prosecuted for a violation of the town code section prohibiting open storage of one or more inoperable vehicles.
On this appeal, defendant makes two arguments. He contends that the ordinance is invalid insofar as it directs him as an owner who by lease has relinquished the right to' enter upon the property, to remove property placed upon it by the tenant. In addition, he challenges the ordinance as an arbitrary and unreasonable exercise of the police power and unconstitutional. The first argument is dispositive, and we will deal with it first.
*289 A conveyance by lease is generally absolute, limited only by its specific provisions. ‘ ‘ By virtue of the right to exclusive occupation which a tenant acquires by his lease he ‘ becomes entitled to use the premises, in the same manner as the owner might have done, except that he must do no act to the injury to the inheritance. ’ ” (Presby v. Benjamin, 169 N. Y. 377, 379 [citation omitted]). Under some conditions, however, liability may attach to the owner of demised premises (Tenement House Dept. of City of N. Y. v. McDevitt, 215 N. Y. 160; Bertholf v. O’Reilly, 74 N. Y. 509). The rationale behind decisions such as these is that the landlord must exercise sufficient care in the selection of his tenant. If he knowingly lets the premises for a purpose which may give rise to liability, he will not be heard to complain, even though he has done no unlawful act (Bertholf v. O’Reilly, supra). Similarly, he cannot permit an unlawful condition to persist with impunity (Real Property Law, § 231, subd. 2; former Penal Law, § 1146; revised Penal Law, §§ 230.25, subd. 1, 230.40; Tenement House Dept. v. McDevitt, supra). However, where the statute was enacted after the lease had been made, the landlord is under no obligation to exercise a right to terminate a lease in order to escape criminal penalty. Consonant, of course, with the Bertholf rationale, this ordinance, if it had been in effect when the lease was executed, might be enforced against defendant landlord, regardless of any reserved or statutory right of entry. It would then be deemed incorporated (Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 388, 435). But, although the attributes of sovereign power may also permit the Legislature to abrogate existing contracts in certain circumstances (Matter of Farrell v. Drew, 19 N Y 2d 486; Matter of Department of Bldgs. of City of N. Y. [Philco Realty Corp.], 14 N Y 2d 291) that body has not delegated such a power to the town (see Town Law, §§ 130, 261). Unknown at common law, the town is a creature of the Legislature and may not act in excess of the powers conferred upon it by statute (Holroyd v. Town of Indian Lake, 180 N. Y. 318, 322). But we agree with defendant that the question of control is decisive and that he may be held responsible only if he had a right of entry at the time that notice was served upon him. That right must be found in the lease or in a statute. It may not be found in the ordinance either directly or impliedly, for the Legislature has not *290 authorized that kind of interference with the landlord-tenant relationship (see Town Law, §§ 130, 261). Consequently, any attempt by the town to create a right of entry would be invalid.
Legislative action has created a right of re-entry when the premises are used ‘ ‘ for any illegal trade, manufacture or other business ” (Real Property Law, § 231, subd. 1). The People did not prove that defendant was engaged in any ‘1 trade, manufacture or other business ’ ’ with respect to the inoperable ears. Indeed, the town, in its fact statement, admits that the son does not operate a junkyard, and that, as a hobby, he gratuitously accepted these vehicles.
In the absence of a reserved right of entry, the landlord has no common-law right to enter upon the demised premises (see Smith v. Kerr, 108 N. Y. 31, 34; Ernst v. Straus, 114 App. Div. 19). Defendant has reserved such a right only for nonpayment of rent. At the trial, the tenant son testified evasively about his rental payments but stated that he usually gave his father about $20 each month, although that figure varied. Since the reserved rent of $12 per year is less than any single $20 payment, there is no basis in this record to conclude that the reserved right of entry was in existence when the notice was served.
Requiring that the lessor retain, control over the leased premises before he may be held responsible for matters with respect to it is not novel in this court. In negligence cases arising from a defective condition on demised property, liability will not attach when the landlord has surrendered control (see, e.g., Roark v. Hunting, 24 N Y 2d 470; Dick v. Sunbright Steam Laundry Corp., 307 N. Y. 422). The reservation of the right of entry to make repairs without a concomitant covenant to do so will not permit a finding of sufficient control to hold the landlord (Dick v. Sunbright Steam Laundry Corp., supra; Appel v. Muller, 262 N. Y. 278; Cullings v. Goetz, 256 N. Y. 287). Similarly, the covenant alone will not give rise to the owner’s liability (Lafredo v. Bush Term. Co., 261 N. Y. 323). The owner has been held only when the facts justify a conclusion that control has been retained in fact (De Clara v. Barber S. S. Lines, 309 N. Y. 620; Noble v. Marx, 298 N. Y. 106; Scudero v. Campbell, 288 N. Y. 328). These cases demonstrate a reluctance to find that the landlord has retained control for the purpose of declar *291 ing him a tort-feasor. By parity of reasoning, we will not strain to find control in order to attach criminal responsibility.
Although our holding renders a treatment of the constitutional question unnecessary, the draftmanship of this ordinance makes such a discussion advisable. An ordinance promulgated for a rational preservation of the aesthetic senses may be a proper exercise of the police power (Matter of Cromwell v. Ferrier, 19 N Y 2d 263) and within the authority of a town to enact (People v. Stover, 12 N Y 2d 462). If the ordinance is valid on its face, a violator may be convicted when his guilt is established by proof beyond a reasonable doubt (ibid.).
As a regulatory zoning ordinance, enforcement here could be sought by way of a mandatory injunction (cf. City of Buffalo v. Roadway Tr. Co., 303 N. Y. 453, 462) or, as was done herein, by a prosecution for failure to comply with a demand to remove a motor vehicle or vehicles. Because the town elected to prosecute defendant, the ordinance must meet the rigorous tests which have been established for criminal penalties. ‘ ‘ Initially, it must be observed that a strong presumption of validity attaches to statutes and that the burden of proving invalidity is upon those who challenge their constitutionality to establish this beyond a reasonable doubt (see Matter of Van Berkel v. Power, 16 N Y 2d 37, 40, and the cases cited therein), but it must likewise be noted that a statute whose effect is to curtail the liberty of individuals to live their lives as they would and whose justification is claimed to lie in the exercise of the police power of the State must bear a reasonable relationship to, some proportion to, the alleged public good on account of which this restriction on individual liberty would be justified.” (Fensier v. Leary, 20 N Y 2d 309, 314.) A penal enactment must not only be strictly construed, especially where, as here, the act is a malum prohibitum and not a malum in se (People v. Vetri, 309 N. Y. 401, 405; People v. Taylor, 192 N. Y. 398, 400; People v. Werner, 174 N. Y. 132, 134), but it must be reasonable and pellucid as well (People v. Bunis, 9 N Y 2d 1, 4; People v. Adamkiewicz, 298 N. Y. 176, 179). The proscribed conduct must not be unreasonable and should be clearly enunciated so that all those who may be affected may gauge their actions accordingly (People v. Munoz, 9 N Y 2d 51, 56; People v. Firth, 3 N Y 2d 472, 474; People v. Vetri, supra).
*292 With these principles in mind we turn to this ordinance and conclude that it may constitute an arbitrary exercise of the police power. By prohibiting the storage of one inoperable vehicle, the ordinance would prevent a landowner from maintaining a single antique for his own reasons. Such an absolute proscription is not justifiable (cf. Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537). We recognize, of course, that an excessive number of antiques could be proscribed by a properly drawn ordinance. And, consonant with the salutary purpose expressed in the preamble, the town could enact such an ordinance. However, the town here would punish an owner who stores one vehicle. Such a Draconian penalty seems unreasonable and, in addition, to a degree so vague as to cast doubt on its validity.
Indeed, the prohibition against inoperable vehicles is too broad. The modifying language, 1 ‘ for legal use on the public highways ’ ’, is so comprehensive as to include in its prohibitions the storage of a 1970 automobile in perfect functional condition but which may not be used on the public highways because it does not have a validated inspection sticker. Of course, storage imports permanence (Matter of Monument Garage Corp. v. Levy, 266 N. Y. 339, 343-344), but an automobile from which the battery and/or the license plates have been removed for the winter is certainly in storage.
■ Even disregarding the modifying language, however, so that the potential coverage is limited somewhat, the term ‘ ‘ inoperative,” which is not further defined, is rather vague. Minimum due process requires that the prohibition must ‘ ‘ be spelled out in words even more explicitly, so that the citizen may receive unequivocal warning before conduct otherwise innocent may be made the cause of fine or imprisonment ” (People v. Munoz, supra, at p. 56 [citation omitted; emphasis supplied]). Standing alone, “ inoperative ” does not satisfy that requirement. Given its ordinary meaning (Bright Homes v. Wright, 8 N Y 2d 157, 162), it necessarily includes any minor defect as a result of which the vehicle cannot be run until repaired. Such a standard is variable. “ It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without *293 any legally fixed standards, what is prohibited and what is not in each particular case.” (Giaccio v. Pennsylvania, 382 U. S. 399, 402-403 [citations omitted].) Consequently, we think this ordinance could be found to be unconstitutional.
Accordingly, the judgment of the Broome County Court should be reversed and the information dismissed.