EVERETT W. HERRICK, Respondent, *v.* HOLLIS J. INGRAHAM, as Commissioner of Health of the State of New York, et al., Appellants.

Third Department, February 6, 1975.

*Louis J. Lefkowitz, Attorney-General* (*Kenneth J. Connolly* and *Ruth Kessler Toch* of counsel), for appellants.

*Levene, Gouldin & Thompson* (*Paul C. Gouldin* of counsel), for respondent.

*Stanley Bryer* for The Natural Resources Defense Council, Inc., and others, *amici curiae*.

SWEENEY, J. After receiving a " Notice of Complaint " from the State Department of Health for alleged violations of section 1116 of the Public Health Law, respondent commenced this action for a declaratory judgment and obtained a stay of the proceeding taken by the Health Department pending the outcome of the action. The trial court, after a nonjury trial, found that section 1116 and related sections of the Public Health Law do not apply to the land sales made by respondent, and appellant's attempt to apply them to such sales was unconstitutional. This appeal ensued.

The facts for the most part are undisputed. Over the past several years respondent purchased 13 farms located mainly in Delaware County. From these farms during an eight-year period he sold off 263 parcels of land, 209 of which contained more than five acres, 41 more than two acres and 13 less than two acres. With the exception of those sales which included farmhouses or other structures existing on the land when it was purchased by respondent, he sold vacant land at random. The record demonstrates a history of transition in land use in Delaware County in the area involved from agricultural to recreational. This Catskill Mountain region with its high and low altitudes, steep woodlands and narrow valleys lost its use as a farming region and with the advent of shorter travel time from metropolitan New York and recreational opportunities in the area, metropolitan New York residents began to buy the old farmland for weekend and vacation use. Respondent sold portions of his 13 farms to those who wanted to own land in the area for recreational purposes. Some of them built cottages or cabins and some brought in trailers, while others, over 100 of them, left the land vacant. Only 24 contain new construction

suitable for year-round occupancy. When the structures were erected, they were put to seasonal recreation use.

The pertinent part of section 1116 of the Public Health Law provides: "1. No subdivision or portion thereof shall be sold * * * by any * * * person, and no permanent building shall be erected thereon, until a plan or map of such subdivision shall be filed with and approved by the department or city, county or part-county department of health having jurisdiction * * * and such plan or map thereafter filed in the office of the clerk of the county in which such subdivision is located."

Section 1115 defines "subdivision" as: "Any tract of land which is hereafter divided into five or more parcels along an existing or proposed street, highway, easement or right-of-way for sale or for rent as residential lots or residential building plots * * * regardless of whether the lots or plots to be sold or offered for sale, or leased for any period of time, are described by metes and bounds or by reference to a map or survey of the property or by any other method of description."

We are again presented with a question as to whether or not respondent's land was divided for sale as residential lots or residential building plots. *Matter of Slavin* v. *Ingraham* (44 A D 2d 874) involved a similar factual situation. In *Slavin,* as in the instant case, there was no evidence of the sellers holding themselves out as subdividers of land for residential purposes. The sales were of recreational lands, at random, as here, and the purchasers were seasonal residents, as is true of substantially all of the purchasers in the present case. We held in *Slavin* that the use of the land by the grantee after conveyance, in and of itself, does not constitute evidence that a parcel was divided for sale as residential lots. Similarly, in the present case, we find no evidence that respondent divided the 13 farms into five or more parcels for sale as residential lots or residential building plots. As we stated in *Slavin* (*supra,* p. 875), the intent and purpose of this statute "is to assure proper water and sewage facilities in subdivision developments." To require respondent to submit detailed plans for such facilities for the vast amount of land involved, where he was selling off vacant acreage at random for recreational purposes, would be contrary to the intent of the statute. In our view, it would be absurd to consider respondent's sales of land from these mountainous farmlands, of no uniform size or shape and in no pattern whatsoever, a "subdivision development" as the term is known and commonly used in the field of land use and as most certainly intended by the Legisla-

ture. From all of the evidence, it is clear that respondent's activity was not land development for residential dwellings, as properly found by the trial court. In the light of reality, therefore, we conclude that upon the record in this case respondent's sales do not come within the purview of sections 1115 and 1116 of the Public Health Law. Consequently, we do not reach the constitutional issues.

The judgment should be modified, on the law and the facts, by reversing so much thereof as declared section 1116 and related sections of the Public Health Law unconstitutional, and, as so modified, affirmed, without costs.

KANE, J. (concurring in part and dissenting in part). We agree that section 1116 of the Public Health Law should not apply to this respondent, but for an additional reason. In our view both sections 1115 and 1116 of the Public Health Law are void as unconstitutionally vague and indefinite, and this court should so state. We recognize the established principle of judicial restraint in striking down statutes as unconstitutional, and that such action should be avoided whenever possible (*Matter of New York Post Corp.* v. *Leibowitz,* 2 N Y 2d 677). However, our Court of Appeals has recently stated that such reluctance should yield when important constitutional issues are raised and are likely to occur again (*Blye* v. *Globe-Wernicke Realty Co.,* 33 N Y 2d 15). Not long ago this court was called upon to construe and consider the applicability of these very statutes (*Slavin* v. *Ingraham,* 44 A D 2d 874). If we continue to treat similar cases on an *ad hoc* basis, we will not only perpetuate an intolerable dilemma for property owners, we will saddle members of the Bar with the burden of instituting proceedings which, in many cases, may ultimately be found unnecessary. Additionally, transfers of real property titles will be seriously affected and needlessly complicate what should be precise and definite legal transactions.

We have no quarrel with the wisdom of statutes establishing and regulating water or sewage disposal matters in so-called realty subdivisions for they are a necessary and valid exercise of the police power (*Matter of Brous* v. *Smith,* 304 N. Y. 164). However, when such statutes, penal in nature, leave a reasonable man uncertain or uninformed as to what conduct they prohibit and what is required of him, they then fail to meet minimum due process requirements of clarity (*Giaccio* v. *Pennsylvania,* 382 U. S. 399; *People* v. *Scott,* 26 N Y 2d 286; *People* v. *Byron,* 17 N Y 2d 64; *Trio Distr. Corp.* v. *City of Albany,* 2 N Y 2d 690).

This problem was before us in *Slavin* where we properly recognized and warned that decisions as to the meaning of various terms in these same provisions left much to conjecture (*Slavin* v. *Ingraham, supra,* p. 875). Furthermore, these statutes constitute a delegation of legislative power in violation of the New York Constitution (N. Y. Const., art. III, § 1; *Packer Coll. Inst.* v. *University of State of N. Y.,* 298 N. Y. 184; cf. *Matter of City of Utica* v. *Water Pollution Control Bd.,* 5 N Y 2d 164).

Read together, these two statutes simply lack the clear, precise, definitive and certain terminology which is required to properly inform an owner of lands what will be asked of him when he seeks to divide up his property. Unless appropriate remedial legislation is soon provided, uncertainty will continue, litigation will ensue, and confusion will abound.

HERLIHY, P. J., and MAIN, J., concur with SWEENEY, J.; KANE and REYNOLDS, JJ., concur in part and dissent in part in an opinion by KANE, J.

Judgment modified, on the law and the facts, by reversing so much thereof as declared section 1116 and related sections of the Public Health Law unconstitutional, and, as so modified, affirmed, without costs.