OPINION OF THE COURT
Harold Hyman, J.
Defendants move to dismiss the indictment on constitutional and other grounds hereinafter more fully discussed.
The section involved, section 190.40 of the Penal Law, best known as the "loansharking” section, provides as follows: "A person is guilty of criminal usury when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan * * * at a rate exceeding twenty-five percentum per annum or the equivalent rate for a longer or shorter period.”
Defendants contend, among other things, that by the use of the language, "not being authorized or permitted by law”, that the crime is defined by reference to "other laws without specification of such other laws” and therefore the statute is void; that, at the very least, it should specify either the Banking Law or the General Obligations Law to which a person may look prior to making a loan suspected of being proscribed, but which might be authorized under such "other laws”; that at best the statutory language is such that it furnishes notice only to a lawyer specializing in banking law; that a penal statute may not merely incorporate the "general body of law” by reference in defining a crime, but must, if incorporating other provisions of law, do so with specificity; that by such lack of specificity it is clearly violative of defendants’ rights to "due process of law”; that a criminal statute must be definite as to the acts which it prohibits and that criminal sanctions are not supportable if they are imposed under vague and undefined commands; that constitutional certainty, in the definition of crime, is "fair warning” of the statutory prohibitions to those of "ordinary intelligence”, that is, "notice of the proscribed activities which is reasonable when gauged by common understanding and experience.” In *129 sum, defendants contend that the statute lacks constitutionality in that a person of "ordinary intelligence” would not know where to look to determine the issues of "authorization” or "permission”, and that it was legislatively incumbent to have delineated the boundaries of conduct with specificity if it be by reference, in order to overcome the presumption of the loan being valid.
The statute finds its origin in the salutary purpose of attempting to stamp out one of the most heinous, virtually bloodsucking, criminal activities of all times, namely, "loansharking”. One need not review the history, its financial and physical effects, nor the awesome incidents occasioned by innocents entering into loan agreements with members of such redoubtable and nefarious business venturers. Sufficient to state that the incidents were of such magnitude of degradation as to cause the enactment in 1965 of former sections 2401 and 2403 of the Penal Law. This simultaneously was followed by the Governor’s memorandum, which stated in part: "the * * * investigation by the State Commission of Investigation into the loanshark racket [which] disclosed that the organized criminal under world is engaged in a vast and highly lucrative usurious money lending business in this State. This element charges unconscionable annual rates of interest of 150 per cent and in some cases, 2000 per cent, and enforces its obligations by fear, threats and violence.
"The Commission’s public hearings revealed that loansharking is producing millions of dollars in revenue for organized crime. * * *
"During the course of the Commission’s work, it became apparent that new laws were required to fill the existing vacuum in New York’s usury laws if the loanshark racket was to be stopped. Accordingly, I requested the Attorney General, the Superintendent of Banks and my Counsel to review the public testimony presented during the investigation and, working with the State Commission of Investigation, to make recommendations for legislaion. This bill is the result of that effort. It also embodies the recommendations made at the Commission’s public hearings by representatives of the New York County District Attorney’s office, the Queens County District Attorney’s office, the New York City Police Department, the Waterfront Commission of New York Harbor and the Suffolk County Police Department. * * *
"This bill provides realistic sanctions which should prove to *130 be a substantial deterrent to loansharking.” (NY Legis Ann, 1965, p 509.)
Upon its original enactment in 1965 section 2401 contained the proscription "except as otherwise authorized or permitted by law” and which provided that: "nothing in this section shall in any way be deemed to modify, alter or amend the provisions of the general obligations law, the banking law, the general business law or any other law which limits or defines lawful rates of interest in this state.”
Resulting from amendments to the "new” Penal Law in 1967, as prepared by the Temporary Commission on Revision of the Penal Law and by chapter 424 of the Laws of 1976, effective September 1, 1976, the "1965” Penal Law sections afore-mentioned were divided into two separate and distinct sections; they became namely, sections 190.40 (Criminal usury in the second degree) and 190.42 (Criminal usury in the first degree) with the last paragraph of the "old” section 2401 being deleted, but both newly amended sections as afore-stated still containing the proscription — with certain additional verbiage — "when, not being authorized or permitted by law to do so.”
One of the major objections of defendants as to the constitutionality of the afore-stated sections of the Penal Law is the Legislature’s failure to denominate the specific sections of "other laws” to which they refer. The objection, although not stated so to be, seems to be founded on section 16 of article III of the Constitution of the State of New York, which states, that: "no act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act. ” (Emphasis supplied.)
It has been held that the evil which this provision of the Constitution was designed to correct was the incorporating into legislative enactments by a mere reference to some existing statute a clause or provision affecting public or private interests to an extent or in a manner not disclosed upon the face of the acts itself, and of which the legislators might be utterly ignorant at the time of its enactment. (People ex rel. Bd. of Comrs. of Washington Park v Banks, 67 NY 568; People ex rel. Everson v Lorillard, 135 NY 285; People ex rel. N. Y. Elec. Lines Co. v Squire, 107 NY 593, affd 145 US 175.)
But, there is the further curative, provision of section 21 of *131 article III of the State Constitution, which specifically refers to section 16, and which provides, that: "Sections 15, 16 and 17 of this article shall not apply to any bill, or the amendments to any bill, which shall be recommended to the legislature by commissioners or any public agency appointed or directed pursuant to law to prepare revisions, consolidations or compilations of statutes. But a bill amending an existing law shall not be excepted from the provisions of sections 15, 16 and 17 of this article unless such amending bill shall itself be recommended to the legislature by such commissioners or public agency.”
Further in approaching this question, we note the observation made in Montgomery v Daniels (38 NY2d 41, 54) stating: "In approaching this question [constitutionality], the court has recognized that as a matter of substantive law every legislative enactment is deemed to be constitutional until its challengers have satisfied the court to the contrary (People v Broadie; 37 NY2d 100, 117; People v Pagnotta [25 NY2d 333, 337]; Matter of Van Berkel v Power, 16 NY2d 37, 40; I.L.F.Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269, app dsmd 369 US 795), [and that] 'There is generally a very strong presumption that "the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation” (Matter of Taylor v Sise, 33 NY2d 357, 364; Matter of Van Berkel v Power, supra; and see People v Broadie, supra)’." But, in addition to the foregoing general rule that every presumption is in favor of the constitutionality of the statute, an act which might otherwise be void under section 16 of article III of the New York State Constitution will also be presumed to be constitutional in the absence of evidence to the contrary, to have been reported by commissioners appointed pursuant to law to revise the statutes (People v Petrea, 92 NY 128; People v Ebelt, 180 NY 470).
To determine whether such presumption may be deemed determinative as a "fact” the court need not hold a hearing, but rather may refer to legislative journals, the original act, or such other permissible evidentiary source available to it (People v Petrea, supra). Here, as to these statutes, the sources have been shown to be and are impeccably unimpeachable and definitively within the purview of section 21 of article III.
Not only is there a strong presumption that a statute duly *132 enacted by the Legislature is constitutional, but, in order to declare such a statute to be unconstitutional, "the invalidity of the law must be demonstrated [proven] beyond a reasonable doubt” (People v Pagnotta, supra, p 337; Matter of Van Berkel v Power, supra, p 40); it has not been so proved herein.
Likewise, as stated in People v Pagnotta (supra, p 337) "Of course, a statute must be sufficiently definite to give a reasonable man subject to it notice of the nature of what is prohibited and what is required of him. (People v Byron, 17 NY2d 64, 67; Lanzetta v New Jersey, 306 U.S. 451.) Moreover, in order to be upheld as constitutional, a law which places some restriction upon an individual’s freedom of action in the name of the police power must bear some reasonable relation to the public good. (People v Bunis, 9 NY2d 1, 4.) A statute which fails to distinguish between innocent conduct and action which is calculated to cause harm may not be sustained.”
The claimed ambiguous, nondefinitive and objectionable language has, to a large degree, been interpreted in connection with the "rent gouging” statute (Penal Law, § 180.55). There the verbiage was very similar to the verbiage used herein. It stated: "in addition to lawful rental and other lawful charges”. The language was held not to invalidate the statute on constitutional grounds, that is, for incorporation of law by nondefinitive specific reference to the law intended (People v Harkavay, 192 Misc 580).
What is more, it was clearly stated in Montgomery v Daniels (38 NY2d 41, 54, supra) that, "where a statute is challenged on nonprocedural grounds as violative of due process of law we have consistently asked the question whether there is '" 'some fair, just and reasonable connection’ between it and the promotion of the health, comfort, safety and welfare of society” ’. (Nettleton Co. v Diamond, 27 NY2d 182, 193, app dsmd sub nom. Reptile Prods. Assn. v Diamond, 401 US 969; People v Pagnotta, 25 NY2d 333, 337; People v Bunis, 9 NY2d 1, 4; Dedance Milk Prods. Co. v Du Mond, 309 NY 537, 541.)”
Thus, it is the opinion of this court that the defendant’s challenge of this statute on nonprocedural grounds, that said statute violates due process of law, must be answered contrary to said contention for this court finds, without equivocation, that there is a fair, just and reasonable connection between the statute and its proscription and the promotion of the health, comfort, safety and welfare of society. This court finds that the section is definitive as to its proscriptiveness and *133 interdiction and that even though it may be malum prohibitum and not a malum in se (People v Scott, 26 NY2d 286, 291), it is reasonable and pellucid and is sufficiently clearly enunciated so that all those who may be affected may gauge their actions accordingly (People v Scott, supra). The statute specifically and definitively states, that the taking or receiving of interest on a loan at a rate exceeding 25% per annum or the equivalent rate for a longer or shorter period is malum prohibitum. It spells out in words so explicit that citizens cannot contend that they have not received unequivocal warning before conduct otherwise innocent could be made the cause of finding of criminality. (People v Scott, supra.) The statute specifically proscribes and fixes standards as to that which is prohibited. The statute is sufficiently definite, giving a reasonable man subject to it notice of the nature of what is prohibited and what is required of him. (People v Pagnotta, supra, p 337.) The statute distinguishes between innocent conduct and an action which is calculated to cause harm.
Defendants’ contention that the statutory prohibitions are unconstitutional because they do not give fair warning to persons of "ordinary intelligence when gauged by common understanding and experience”, is likewise unsupportable. Even if one does not invoke one of the oldest legal homilies, that is, that all persons are presumed to know the law (not just lawyers), there has been such a tremendous outcry in and over the printed news media, radio and television about the subject of "loansharking” that it is hard, very hard, and unbelievable that some form of it had not come to the attention of the defendants, even if by mere hearsay. What is more, one who engages in such business or intends to engage in such business, certainly has sufficient intelligence in mathematics to know when his so-called "rates” exceed the statutory limit and to therefore seek legal advice. Furthermore, there is no claim by defendants of their not having knowledge of the law, and to therefore attempt to overcome the presumption that they did have such knowledge.
The claim of defendants that their right to "due process of law” under section 6 of article I of the Constitution of the State of New York and/or the Fifth and Fourteenth Amendments (§ 1) of the Constitution of the United States is being violated by their prosecution under .the section of the Penal Law involved, is legally unfounded.
Due process of law has been held not to mean the very act *134 of legislation effecting or authorizing a deprivation of life, liberty or property (People ex rel. Isaacs v Moran, 206 NY 670), but it is a concept of what is fundamentally just, fair and right (People v Colozzo, 54 Misc 2d 687, affd 32 AD2d 927). It does not follow that equal protection or due process has been denied merely because it may create a so-called "hardship” upon a person (College Barn v State of N. Y., 60 Misc 2d 715, affd 25 NY2d 657). As was aptly stated by Mr. Justice Frankfurter in Rochin v California (342 US 165, 173): "Due process of law * * * precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend 'a sense of justice.’ ”
It is the opinion of this court that no fundamental "sense of justice” has been nor will be denied these defendants by subjecting them to prosecution on this indictment. Merely subjecting defendants to a possible hard result based upon the legislation involved does not constitute any violation or deprivation of any of their fundamental, statutory or constitutional rights. The law is not unreasonable nor is it arbitrary. It reasonably relates and applies to an actual, manifest, fearsomely violent evil. The legislation wholesomely tests out as having a salutary, permissible legislative and State objective (Montgomery v Daniels, 38 NY2d 41, supra). The prohibition has been sufficiently spelled out so that the citizenry have received unequivocal warning of the proscribed conduct (People v Scott, 26 NY2d 286, supra).
The motion to dismiss the indictment for lack of constitutionality is denied.
On the other hand, the issue raised by defendants pursuant to CPL 200.50 is another matter.
CPL 200.50 (subd 7) requires an indictment to contain "A plain and concise factual statement * * * without allegations of an evidentiary nature, asserts facts supporting every element of the offense charged * * * with sufficient precision to clearly apprise the defendant * * * of the conduct which is the subject of the accusation”. (Emphasis supplied.)
To set forth the concise verbiage of the statute involved alone, is to merely state legal conclusions, not the facts upon which the same are based (People v Jackson, 60 AD2d 893). Since an indictment is a mere "accusation” it is in no different pleading position than that of a complaint in a civil action *135 under CPLR 3013, which, for all intents and purposes, reads similarly to CPL 200.50 (subd 7).
In the matter of Lence v Sheldon (34 AD2d 966) the Appellate Division, Second Department, specifically held, that, where a cause of action consisted in a mere conclusory paragraph that defendants demanded and received usurious interest on plaintiff’s indebtedness to them, the cause of action must be made more definite and certain by setting forth (1) the amount of the loans made to plaintiff which is claimed to be usurious; (2) the time when these loans were made; (3) the respect in which the loans were usurious and (4) the amount of principal and interest paid on the loans, thereby clearly indicating the proper factual requirements of the civil complaint, and, incidentally in the opinion of this court, the factual requirements to be set forth in a criminal indictment for usury.
In the instant matter, the indictment charges that defendants committed an illegal act, but merely in the verbiage of the statute. Such constitutes a mere conclusory and nonfactual legal allegation. As such, it is legally insufficient. (Walsh v New York State Liq. Auth., 23 AD2d 876, affd 16 NY2d 781; Lence v Sheldon, supra.) Defendants’ right to a factual statement showing how the charge is arrived at in factual terms is fundamental (People v McGuire, 5 NY2d 523; People v Schultz, 301 NY 495, 497; People v Love, 306 NY 18) nor can such a deficiency be cured by mere bill of particulars (People v Jackson, supra; People v Belcher, 302 NY 529). Rather, it is the duty of the courts to see to it that the right which the Legislature has accorded to a citizen accused of crimes to have the indictment state the facts constituting the crime, so that he may prepare his defense and to prevent him from again being tried for the same offense (People v Schultz, supra; People v Corbalis, 86 App Div 531).
The indictment, as it now consists, cannot be amended pursuant to CPL 200.70, for it cannot cure "legal insufficiency of the [so-called or intended] factual allegations” (subd 2, par [b]), even though upon examination of the minutes of the Grand Jury in camera, sufficient legal evidence was adduced before the Grand Jury to warrant the issuance of the indictment.
Under the circumstances, this indictment is dismissed against both defendants, with leave to the District Attorney to resubmit this matter to another Grand Jury within 45 days *136 from the date of this order. In the interim the defendants are held by this securing order for the action of a Grand Jury in bail of $500 as to each of them with respect to said charge (CPL 210.45, subd 9).
Under the circumstances, all other motions with regard to the above indictment are herewith denied without prejudice to renewal upon and if defendants be reindicted on this charge.