OPINION OF THE COURT
Ronald Buttarazzi, J.
On December 13, 1979, the Town of Perinton amended section 142-15 of the vehicle and traffic portion of the Perinton Code by adding subdivision B entitled Parking Restrictions and which provided as follows: “No person, except those persons prominently displaying a valid handicapped parking permit (MBD Form MC-664) on the windshield on the driver’s side of the vehicle or except when so directed by a police officer shall stop, stand, or park a motor vehicle in an area or space designated for handicapped parking in any parking area or driveway of public property or a hospital, shopping center, private apartment house complex or private condominium complex; provided, however, that either the owner or the person in general charge of the operation and control of such private area shall file with the Perinton Town Clerk a written request that this regulation be enforced on its property.” On June 15, 1980, Perinton Hills executed the required written request that this regulation be enforced.
*318 Several persons have received appearance tickets for apparent violation of this ordinance. On July 25, 1980, at 4:30 P.M. a traffic violation ticket was issued and placed upon defendant Michael Sheridan’s car for a violation of this restriction. The Deputy Sheriff added under the “remarks” section of the traffic ticket, the following notation: “Black Monte Carlo 2DSD. Backed in, sign RT rear of vehicle. Vehicle facing southbound. Parked in front of the American Health Club. Sign intact and visible”.
The contested violations have all taken place in the commercial complex referred to as Perinton Hills. Evidence adduced at the trial or hearing established the following: The Perinton Hill sign in question is apparently approximately 12 inches by 12 inches being a brown sign bearing a white logo of a wheelchair and person on it, together with white lettering bearing the legend “Permit Required”. Such a sign or signs do not conform with the New York State Manual of Uniform Traffic Control Devices which require a green legend with a white background (see NY State Manual of Uniform Traffic Control Devices, § 214.2, subd [c]), or with the United States Department of Transportation booklet entitled “Standard Highway Signs” which requires a green border and legend with a white symbol on a blue background and a white background— the sign known as R7-8.
The Perinton Code itself does not have any requirements with reference to the nature and manner of designating handicapped parking areas. This, in itself, might render the ordinance void as being unconstitutionally vague. (See Trio Distr. Corp. v Albany, 2 NY2d 690; People v Campobello, 21 Misc 2d 1015; People v Scott, 26 NY2d 286.) Although the court does not reach this question in this opinion, it would appear that a properly drafted ordinance would contain the following minimal requirements: (1) A definition of the word “handicapped person” of sufficient clarity to designate the class of persons intended to be protected; (2) A definitive standard as to the requirements of posting and the nature of the required notice in conformity with Federal and State laws and regulations;(3) A procedure to secure permits for persons permanently *319 and/or temporarily handicapped; (4) Appropriate penalties or fines for the violation.
The town has argued that the New York State Manual of Uniform Traffic Control Devices (hereinafter referred to as the manual) is a regulation limited to public highways and that a private owner has the right to “create” its own signs “on his own private property”. This argument ignores the principle that the power of the municipality is derivative in nature from the State. (See Fifth Ave. Coach Co. v City of New York, 194 NY 19.) Subdivision (a) of section 1683 of the Vehicle and Traffic Law provides: “No ordinance, order, rule or regulation made by any' local authority under the powers conferred by this title shall be effective until signs or markings giving notice thereof are posted, except under such conditions as may be authorized in writing by the department of transportation” (emphasis supplied). No written authorization from the Department of Transportation has been presented to the court as to the signs in Perinton Hills.
The obligation is placed upon local authorities to place and maintain traffic control devices conforming to the State manual and specifications. (See Vehicle and Traffic Law, § 1682.)
The argument that the signs in question are on private property is of no avail. The area in question is a commercial area open to the general public to which the general public is invited. The written request that the handicapped parking be enforced on its property by the owner constitutes an implicit consent to abide by the necessary requirements of the appropriate Federal and State laws as well as regulations. This is so because official law enforcement agencies are thereby authorized to enforce the ordinance and the courts are further required to determine violations and penalties. The public interest is of a sufficient magnitude to require the implementation of the requirements of the manual. Section 214.2 (subd [a], par [2]) of the manual provides as follows: “Where the standard legends do not apply, other messages consistent with promulgated orders, ordinances, rules or regulations may be used. In this case the signs must conform to the standard signs with *320 respect to color and minimum letter sizes. The sign may be increased to fit such other messages.” (Emphasis supplied.)
Furthermore, the manual requires pursuant to section 201.4, design (a), the following:
“The basic requirements of a traffic sign are that it be recognized as such, that it be legible for those who are to be informed by it, and that it be understood in time to permit a proper response. This means high visibility, lettering or symbols of adequate size, and a short legend for quick comprehension. Simplicity and uniformity in design, position, and application are of the greatest importance.” (Emphasis supplied.)
The individuality and distinctiveness of the signs in Perinton Hills is such that they do not conform to signs ordinarily used by governmental authorities to apprise citizens of restrictions on parking enforceable by penalty or fine. (See NY State Manual of Uniform Traffic Control Devices, § 214, subd [2], par [c].) Furthermore, the signs are not posted at the places ordinarily used to warn drivers of restricted parking. (See NY State Manual of Uniform Traffic Control Devices, § 214.4.) In addition, the placement and coloring of the sign is such as to cause the sign and/or signs to blend with background coloring. This virtually results in a trap to the unwary citizen, who, although he observes the sign, does not become aware that it has the compelling force of law rather than a mere recommendation of the private owner.
The aesthetic values of the private owner is subordinate to the public interest.
The court does not question the philosophy and/or appropriateness of an appropriately drafted ordinance making special provisions for handicapped parking privileges. The issue before this court is a standard by which appropriate notice is given to the public before subjecting a citizen to a fine or penalty. Section 80-6 of the Perinton Code apparently requires a minimum fine of $25. The applicability of section 80-6 to this type of violation is also questionable.
Accordingly, the court dismisses the proceeding against *321 the defendant, Michael R. Sheridan. Furthermore, in the interest of justice, the court further orders that upon proper application of writ of error coram nobis that the fines imposed by reason of violations at the Perinton Hills Shopping Center be considered for refund.