OPINION OF THE COURT
Christopher J. Enos, J.
This is a criminal action brought on by the Town of Irondequoit under the above caption, by means of an information sworn to July 2, 1998. Within said document, the defendant homeowner is charged with “the offense of illegally constructing a fence without a permit”, and “as of July 1, 1998, (failing) to correct violation to comply with Town of Irondequoit Municipal Code” in violation of Town of Irondequoit Municipal Code (Irondequoit Town Code), chapter 98, article III, § 98-9 (A).[1]
A violation of chapter 98 is “punishable by a fine of not more than one thousand dollars ($1,000) per day of violation or imprisonment not exceeding one (1) year, or both.” (Irondequoit Town Code § 98-50 [A].) Further, “each day that the prohibited condition(s) or violation continues shall constitute a separate offense.” (Irondequoit Town Code § 98-50 [B].) Accordingly, this punishment appears to be at least the equivalent of that for a class A misdemeanor under New York State Penal Law. (See, Irondequoit Town Code § 1-16 [B]; Penal Law § 70.15 [1], [3].)
“A penal enactment must not only be strictly construed, especially where, as here, the act is a malum prohibitum and not a malum in se (People v. Vetri, 309 N. Y. 401, 405; People v. Taylor, 192 N. Y. 398, 400; People v. Werner, 174 N. Y. 132, 134), but it must be reasonable and pellucid as well (People v. Bunis, 9 N Y 2d 1, 4; People v. Adamkiewicz, 298 N. Y. 176, 179).” (People v Scott, 26 NY2d 286, 291 [1970].) Further, statutes in derogation of the defendant’s right at common law to build what she pleases upon her own property must be strictly construed in favor of the defendant. (Thomson Indus. v Incorporated Vil. of Port Washington N., 27 NY2d 537 [1970]; 122 E. Fortieth St. Corp. v Dranyam Realty Corp., 226 App Div 78, 80 [1st Dept 1929].)
*703 At the time of trial on October 27, 1998, counsel for both the Town and the defendant homeowner stipulated to the following: (1) the “Facts” portion of the charging document; (2) a photograph of the home in question; and (3) an original building permit issued by the Town to the homeowner for a fence on April 23, 1997. It was further stipulated that the “fence” in question here was constructed in April 1997.
Under Irondequoit Town Code former chapter 130, a fence was defined as “an artificial structure designed to or which in fact (did) divide, enclose, or screen a parcel of land or portion thereof.” (Irondequoit Town Code former §§ 130.4, 130.6 [1976].) This definition was consistent with the common law that defined “fence” as “an inclosing structure, composed of any material which will present a sufficient obstruction, about a field or other space intended to prevent intrusion from without or straying from within”. (Blair v 305-313 E. 47th St. Assocs., 123 Misc 2d 612, 613-614 [Sup Ct 1983]; see also, Stauss v Park, 46 Misc 2d 64 [Sup Ct 1965, Witmer, J.]; Van Gorder v Eastchester Estates, 207 Misc 335 [Sup Ct 1955]; Black’s Law Dictionary 745 [4th ed].)
Under revised 1997 Irondequoit Town Code § 235-4 (B) (Local Laws, 1997, No. 1 of the Town of Irondequoit [eff Mar. 18, 1997]), “Fence” was similarly defined as “An artificially constructed enclosure or barrier or any material or combination of materials, but not including a hedge or other natural growth, erected to enclose or screen areas of land.” It is notable that the term “Structure” was removed from this revised definition, at the same time that “Structure” was, itself, redefined within the same chapter and subdivision as “an assembly of materials, forming a construction framed of component structural parts for occupancy or use, including buildings.”
Additional definitions were added in 1997 for “Fence, boundary,” “Fence, decorative,” “Fence, privacy,” and “Fence, safety.” However, each such definition included reference to the previously defined term of “Fence,” with only an additional specification of various types of functions that related, respectively, to the terms “boundary,” “decorative,” “privacy,” and “safety.” (Irondequoit Town Code § 235-4 [B].)
Although no specific permit was required for any fence under Irondequoit Town Code § 235-69 (1997), limitations were placed upon the height and location of fences of the type and kind typically found in zoning codes, none of which are relevant *704 here.[2] (See, e.g., Matter of Schmidt v Zoning Bd. of Appeals, 31 AD2d 882 [4th Dept 1969].)
The photograph submitted shows a small, attractive, wooden, split rail, construction consisting of three posts approximately three feet in height, near a front corner of the homeowner’s driveway, with a total of four rails connected thereto that appear approximately 6 feet to 7 feet in length. Said partial “fence” fronts, but does not enclose, a small garden, in a well-kept yard, containing a modest but attractive home, in a peaceful neighborhood, that would seem appropriate on the cover of some magazine entitled “Our American Homes.” I find that the construction complained of does not constitute a “fence” as such is defined in Irondequoit Town Code § 235-4 (B). It neither encloses nor screens the subject property or any portion thereof. In effect, it is no different, and no more a barrier, than any number of other lawn decorations that homeowners use to beautify their property as they see fit. This small collection of split rails and posts no more constitutes a “fence” than does the placement of plastic pink flamingoes constitute an aviary.
Since this construction is neither a “Building,” a “Structure,” nor a “Fence” as defined in Irondequoit Town Code § 235-4 (B), it is not subject to any of the requirements of either Irondequoit Town Code § 98-9 or § 235-69 as such were in effect at all times alleged in this case.[3] On August 18, 1998, the Town Board extensively amended Irondequoit Town Code § 2S5-69.[4] However, both the date of the construction of the complained of “fence” in this case, and the alleged date of violation charged herein, antedate these amendments. Accordingly, I find that *705 neither section 98-9 nor former section 235-69 of the Irondequoit Town Code applies to this defendant, and that this case should be dismissed by reason thereof. (Town of Greenburgh v Bobandal Realties, 10 NY2d 414, 421 [1961].)
However, further discussion of the applicability of revised section 235-69 to the defendant herein is necessary. It is the further opinion of this court that this defendant should not be subject to the continued restrictions that would otherwise be imposed upon her if she were deemed to have nonconforming fencing which “legally existed” prior to the adoption of Irondequoit Town Code § 235-69 (Aug. 1998).[5]
Simply stated, Irondequoit Town Code § 235-69 (A) and (E), as amended, are void as unconstitutionally vague and indefinite. Similarly, the newly amended Irondequoit Town Code § 235-69 (C) (1) is an overly broad, unreasonable, and confiscatory restriction on the rights of property owners; and, as such, is unconstitutional.
There is an established principle of judicial restraint in striking down statutes or ordinances as unconstitutional, and that such action should be avoided whenever possible. (People v Barber, 289 NY 378, 385 [1943].) However, such reluctance should yield when important constitutional issues are raised and the controversy is of a kind likely to occur again. (Blye v Globe-Wernicke Realty Co., 33 NY2d 15, 19 [1973].) If the issues presented by revised Irondequoit Town Code § 235-69 are not addressed, then not only this defendant, but hundreds of other homeowners, could be unknowingly cast into a category of owners of “previously legal” fences. Countless other property owners would be left to question the propriety of the simplest of lawn decorations. If we continue to treat similar cases such as this on an ad hoc basis, then we will perpetuate an intolerable dilemma for property owners, as well as an unnecessarily fertile field for members of the Bar.
Laws reasonably regulating the location of buildings or structures, or those protecting against obstacles to vehicular or *706 pedestrian traffic are a necessary and valid, exercise of the police power. (Matter of Brous v Smith, 304 NY 164 [1952].) “However, when such statutes, penal in nature, leave a reasonable man uncertain or uninformed as to what conduct they prohibit and what is required of him, they then fail to meet minimum due process requirements of clarity”. (Herrick v Ingraham, 46 AD2d 546, 549 [3d Dept 1975], citing Giaccio v Pennsylvania, 382 US 399; People v Scott, 26 NY2d 286 [1970]; cf, People v Byron, 17 NY2d 64, 66 [1966]; Trio Distrib. Corp. v City of Albany, 2 NY2d 690, 696 [1957].)
As discussed supra, the definitions of both “Fence” and “Fence, Decorative” as found in Irondequoit Town Code § 235-4 (B) were, and are, explicit. It is these very definitions that were specifically included, by reference, into the amended law by Irondequoit Town Code § 235-69 (B).
However, revised Irondequoit Town Code § 235-69 (A) (1), rather than limit the applicability of the revised law to those definitions, made the revised law applicable to “fences, walls, and any other similar construction.” (Emphasis added.) Thus, the former definition of “fence” has been made unclear. And, the definition of “similar construction” has been improperly left to the discretion of Code enforcement officers.
Further, revised Irondequoit Town Code § 235-69 (E) gratuitously refers to “Front yard decorative fencing,” without further definition, and purports to require:
“(1) Fencing shall not exceed 42 inches in height and shall require a permit.
“(2) Fencing must be of open-type construction (split rail, picket or the like). Solid and chain link type fencing shall not be allowed.
“(3) Such fencing shall be limited to 30 total linear feet. Said fence must be set back a minimum of three feet from the front property line to allow for visual clearances and sidewalk snow removal.”
The provision specifying “open-type construction (split rail, picket or the like)” leaves it to guesswork as to what “the like” is; whether pickets or rails might be too close together so as to be “solid”; and whether or not the construction can enclose a tree or a small garden, even if it is set back 50 feet from a sidewalk. The provision limiting such to “30 total linear feet” makes no differentiation for the vastly different frontages and lot sizes in the Town. The arbitrary provision that such “must be set back a minimum of three feet from the front property *707 line” makes no provision for older boundary lines that may be referenced to the center of a street. The attempted justifying language, “to allow for visual clearances and sidewalk snow removal”, appears to eliminate application to those streets that do not have sidewalks, and that would otherwise be governed by the previously referenced Irondequoit Town Code § 198-4 dealing with obstructions along a street.
The vagueness of these laws, when coupled with the criminal penalties for failure to obtain a permit, requires that Irondequoit Town Code § 235-69, both (A) and (E), be struck. (People v Berck, 32 NY2d 567, 569 [1973].)
Finally, and perhaps most importantly, by the terms of Irondequoit Town Code § 235-69 (C) (1), “All fences shall require a building permit.” (Emphasis supplied.) This would appear to require application to the Town for its prior approval for all “fences” or “fencing,” or “other similar construction” regardless of size or location or even the most obvious compliance with height and setback requirements. It is impossible to see how such a requirement could be uniformly enforced against all property owners for all perceived “fences” or “fencing.” Rather, such a scheme invites discriminatory enforcement and seems roughly akin to the old protection racket — pay permit fees and there won’t be trouble for you. Anyone foolish enough to want to improve the looks of his home without paying for prior government approval risks prosecution. By enacting this law, local government has encouraged such discriminatory enforcement and has now cast itself in the role of local bully. (People v Bright, 71 NY2d 376, 382-384 [1988].)
“Crimes may be created without intent as a factor other than an intent to commit the prohibited act * * * but there must be some reasonable relationship between the public safety, health, morals or welfare and the act prohibited”. (People v Munoz, 9 NY2d 51, 58 [1961].) Here, the Town Board may have intended that any or all objects such as the one in this case be deemed “fences” to eliminate potential obstacles to people or snowplows. However, I find that the construction here, as well as hundreds like it as found throughout the Town, pose no discernable obstacle or obstruction of any kind, nor any visual or physical impediment or screen to either pedestrian or vehicular traffic— including any sidewalk snowplow known to man. And, if such were to be so, removal would seem to be otherwise permitted under Irondequoit Town Code chapter 198. Any laudatory intent of enforcing traditional zoning requirements of “location *708 and height” may surely be met by some means less burdensome than requiring that all fences “or other similar construction”, both good and bad, be specially permitted. This new and all-encompassing requirement of licensing all “fences” or “fencing” constitutes an unreasonable infringement of basic property rights of homeowners. (People v Bunis, 9 NY2d 1, 5 [1961]; Fenster v Leary, 20 NY2d 309, 314 [1967]; Good Humor Corp. v City of New York, 290 NY 312 [1943].)
If anything, most fences, landscaping, and decorations display pride of ownership. They add not only to the value of the property in question, but also to the over-all beauty of a community whose citizens take pride in their diversity and draw strength from their independence. It is appropriate to construe Irondequoit Town Code § 235-69 as amended according to the fair import of its terms. (New York Post Corp. v Leibowitz, 2 NY2d 677, 685 [1957].) It is also appropriate to presume that the enactors of the involved local laws would never intend that such laws be interpreted in a manner that would make criminals of conscientious homeowners. Yet, by the fair import of their terms, that is precisely what these laws allow.
A penal enactment must be clearly enunciated so that persons affected by it are warned unequivocally what is prohibited and what permitted. (People v Scott, 26 NY2d 286 [1970], supra; cf., People v Greenwald, 299 NY 271 [1949].) When read with other provisions of the Irondequoit Town Code, these laws simply lack the clear, precise, definitive and certain terminology which is required to properly inform an owner of lands what will be asked bf him when he seeks to put a simple decoration on his front lawn, or even a small plastic fence around the family elm tree in the side yard. The chilling effect that this may have upon ordinary citizens who want to keep up their home is obvious. Unless appropriate remedial legislation is soon provided, uncertainty will continue, litigation will ensue, and confusion will abound. Indeed, the only other remedy then available to Irondequoiters will be to move to a community that is still free of such unwarranted government intrusions upon their basic property rights.
This prosecution has needlessly caused the defendant in this case unwarranted aggravation and expense. The fact that she has had the courage to stand up for her rights, despite implicit threats of fines and imprisonment, is a tribute to the American *709 spirit. There is no need for other homeowners to be similarly afflicted in the future.
The matter is dismissed in its entirety, with prejudice.

. Section 98-9 (A) provides: “No person * * * shall commence erection, construction, enlargement, alteration, removal, improvement, demolition, conversion or installation therein of any building or structure or change in nature the occupancy of any building or structure without first obtaining an appropriate permit from the Building Inspector, except that no permit shall be required for the performance of repairs which are not structural in nature and do not entail plumbing, electrical, heating, ventilation systems or components.”

. Irondequoit Town Code former § 235-69, as was in effect at the time of the alleged offense in this case, provided as follows: “Fencing. No fence shall be erected in any district higher than four (4) feet, except rear yards, and beyond the rear Une of a dwelling a fence shall not be higher than six (6) feet. The face side thereof shall be located so as to face the adjoining lot. In residential districts, a fence shall not extend beyond the front line of the dwelling. On corner lots, no fence shall extend beyond the building line as extended from both streets. Electric and barbed wire fences shall not be permitted.”

. There was a building permit issued for this fence in April 1997. Even though further supportive of this defendant’s case, the issuance of any permit here was surplusage.

. Part of the People’s case was that the defendant was told that she “would have to comply with ordinance approved December 16, 1997 by the Town Board.” Although there had been a vote by the Town Board on December 16, 1997, to similarly amend section 235-69 to require, among other things, a building permit for all fences, such local law was never filed with the Secretary of State. Therefore, that attempted amendment was never made effective.

. Irondequoit Town Code § 235-69 (A) (Aug. 1998):
“Purpose.
“(1) It is the purpose of this section to regulate the location and height of fences in all zoning districts and it shall apply to fences, walls, and other similar construction.
“(2) The intent of this section is to provide uniform enhancement, security and privacy to property. Fencing which legally existed prior to the adoption of this section may continue as long as it is kept in substantial repair. The replacement or repair of such fencing may occur only in-kind up to 50% in any given calendar year.”